FILED MA
in

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF ILLINOIS

EASTERN DIVISION

FEB 1 3 2014
Feb 13 2014
THOMAS G. BRUTON
CLERK, U.S. DISTRICT COURT

DOIAKAH GRAY,

    Plaintiff,

V.

    Case No. 12 C 0244

    Judge Gary Feinerman

IMHOTEP CARTER, et al.,

    Defendants.

## PLAINTIFF'S RESPONSE TO DEFENDANTS' LOCAL
## RULE 56.1 STATEMENT OF UNCONTESTED FACTS

    NOW COMES, DOIAKAH GRAY, pro se, responding to the defendants, JACQUELINE MITCHELL-LAWSHEA, D.D.S., STEVEN FISCHMAN, M.D., JOE SHEEHY, WARDEN D. EDWARDS, AND MARCUS HARDY' Local Rule 56.1 statement of uncontested facts.

    In support the Plaintiff states as follows:

    1. Plaintiff, DOIAKAH GRAY ("Plaintiff"), was an inmate incarcerated at Stateville Correctional Center ("Stateville") at the time of the occurrences alleged in his Complaint. (Ex. A 10).

    ANSWER: Admit.

2. Defendant, JACQUELINE MITCHELL-LAWSHEA, D.D.S. ("Mitchell") was a Dentist at Stateville Correctional Center at the time of the occurrences alleged in Plaintiff's Amended Complaint. (Ex. A, 7, Ex. B 1).

ANSWER: Admit. In addition, Mitchell was the Dental Director (supervisor) of Stateville's Dental Department.


3. Defendant, STEVEN FISCHMAN, was a Dentist at Stateville Correctional Center at the time of the occurrences alleged in his Complaint. (Ex. D, pg. 55, 1n 15-17).

ANSWER: Admit.

4. Defendant, JOSEPH SHEENY, was a Certified Medical Technician at Stateville Correctional Center during the period of October, 1992, through March, 2012 (Ex. C 1).

ANSWER: Sheeny has not adduced any evidence to substantiate this Claim. Otherwise the Plaintiff admits.

5. Defendant, WARDEN D. EDWARDS, was an Assistant Warden of Programs at Stateville Correctional Center at the time of the occurrences alleged in his Complaint. (Ex. E, pg. 123, 1n 21-22).

ANSWER: Admit.

6. Defendant, WARDEN MARCUS HARDY, was a Warden at Stateville Correctional Center at the time of the occurrences alleged in his Complaint. (Ex. A, 22).

ANSWER: Admit

## Jurisdiction and Venue

7. This Court has jurisdiction pursuant to 28 U.S.C. 1331 and 1343(a)(3), and venue under 28 U.S.C. 1391(b)(2). Jurisdiction venue are not disputed. (Ex. A, pa. 1, 2).

ANSWER: Admit.

## FACTS

8. Plaintiff filed suit under 42 U.S.C. 1983 alleging Defendants violated his constitutional rights by failing to provide an adequate treatment plan for his alleged degenerative Temporomandibular Joint disorder ("TMD"). (Ex. A pa. 45)

ANSWER: Deny. The Plaintiff objects to the defendants use of the phrase "adequate treatment plan" as it relates to the State defendants in this Statement of uncontested facts. The Plaintiff alleged that Wexford Health Source Incorporated ("Wexford") failed to offer an "adequate treatment plan" for Tempormandibular Joint Disorder ("TMD"). (See Def.'s uncontested facts, Exhibit-A, paragraph 45). The Plaintiff's claims against the State defendants, parties to this Summary Judgment, alleges they failed to provide the Plaintiff with adequate medical treatment. (Id., paragraph 44).

9. The Plaintiff first noticed the symptoms associated with TMD at some point in 1999. (Ex. B. pg. 8, ln 23-24). Plaintiff requested medical attention for the jaw pain and was seen by a doctor and given pain medication. (Ex. D. pg. 10, ln 1-11). The pain medication was effective at treating his symptoms. (Ex. D, pg. 11, ln 17-21)

ANSWER: The Plaintiff admits the first and second parts

of this paragraph. However, the Plaintiff only admits that the medication he received only helped for a short period of time (Def's uncontested facts, Ex. D, pg. 11, ln 23-24). After the medication ran out, the Plaintiff's symptoms started back. Id.

10. Plaintiff was first seen by a dental professional on September 28, 2001. (Ex. D, pg. 15, ln 7-12). During this visit Plaintiff was diagnosed with a condition called bruxism. (EX. D, pg 16, ln 1-22). The dentist informed Plaintiff that bruxism is the grinding of teeth while the individual is asleep at night. Id. The dentist explained that a night guard helps reduce the friction between the teeth at night and prescribed Plaintiff a night guard to relieve the tension in his Jaw. (Id, Ex B, para. 4). Plaintiff received the night guard. (Ex. D, pg. 17, ln 2-6).

ANSWER: Admit.

11. Prior to receiving a night guard, Plaintiff underwent an equilibration, or filing down of his teeth, in order to form a proper bite. (Ex. E, pg. 29, ln 16-24, pg. 30, ln 2-5).

ANSWER: Admit. However, the equilibration misaligned the Plaintiff's bite and Jaw function (the opening and closing of the Plaintiff mouth).

12. Plaintiff's dental records do not reflect an actual diagnosis of TMD. Plaintiff's dental records states that his Jaw bothers him and that he has pain near the Temporomandibular Joint ("TMJ") (Ex. E, pg. 26, 15-19; pg. 28, ln 7-10)

ANSWER: Deny. The Defendants are referencing one

Medical record that States the Plaintiff's "Jaw bothers him possible TMJ" (attached Exhibit-A, pg. 3, date "1/6/2001") However, the Plaintiff's medical records are documented with over ten years of bruxism and TMJ treatment. (Id. pg 3, dates: "9-28-2001", "8/27/02", 10/7/02; pg. 4, "4/18/03", "11/21/03"; pg. 6, "5/30/08"; and pg. 8, "12/2/2011") (See attached Exhibit-B, pg. 1. date "7/13/00"; pg. 2, date "7/13/2000"; pg. 3, date "1/12/01"; pg. 4, date "1/25/01"; pg. 5, date "2/27/01"; pg. 6, date "6/20/01", "7/12/01"; pg. 7, date "6-__-01"; and pg. 8, date "2/13/10", "2/17/10"); (Also See Def.'s uncontested facts, Ex. B, paragraphs 4 and 8, [Mitchell's affidavit acknowledging she treated the Plaintiff for TMJ]).

13. Plaintiff continued to experience pain in his Jaw and received Tylenol from medical technicians to alleviate his jaw pain and headaches (Ex. D, pg. 20, ln 2-5).

ANSWER: Admit.

14. Plaintiff was seen by a dentist, on October 7, 2002, and this dentist prescribed Plaintiff a new night guard. (Ex. D, pg. 18, ln 6-8, pg. 21, ln 4-9). Plaintiff received this second night guard on Nov. 26, 2002. (Ex. O, pg. 22, ln 11-12).

ANSWER: Admit.

15. Plaintiff was seen in the dental department by an oral Surgeon May 2, 2003. (Ex. D, pg. 22, ln 19-22). Although Plaintiff told the oral Surgeon the night guard was not alleviating his pain

the oral surgeon told Plaintiff to continue to wear the night guard. (Ex. D, pg. 23, 1n 5-11).

ANSWER: Admit

16. Plaintiff was seen by a dentist on November 21, 2003, (Ex. D, pg. 26, 1n 9-13). Plaintiff was seen by the same dentist on December 23, 2003 (Ex. D, pg. 31, 1n 2-7). This dentist determined that Plaintiff had an open bite and referred the Plaintiff to the oral surgeon. (Ex. D, pg. 31, 1n 9-13, pg. 32, 3-4, pg. 33 1n 1-3).

ANSWER: Admit.

17. Plaintiff was seen by oral surgeon, Dr. Graig, on January 16, 2004, for pain near the TMJ. (Ex. D, pg. 33 1n 3-5, 1n 17-20). Dr. Graig removed a tooth that was preventing the Plaintiff from closing his mouth and causing premature contact resulting in pain. (Ex. D., pg. 33, 1n 7-11, pg. 34 1n 1-5, pg. 34, 1n 13-15). The Plaintiff was seen by Dr. Graig again on February 27, 2004, and June 4, 2004, to remove two additional teeth. (Ex. D, pg. 33, 1n 15-16, pg. 35, 1n 5-10, 1n 22-23). Plaintiff was seen again by Dr. Graig on September 17, 2004, and September 13, 2005. (Ex. D, pg. 36, 1n 5-7, pg. 38, 1n 18-21).

ANSWER: Plaintiff denies that he was seen Dr. Graig for pain near the TMJ. The Plaintiff was requesting treatment for TMJ disorder. (Def.'s uncontested facts, Ex. D, pg. 33, 1n 17-20). The Plaintiff admits that Dr. Graig removed a tooth on January 16, 2004. The Plaintiff admits the remaining part of this paragraph.

18. Plaintiff was under the care of a dentist between September 13, 2005, and December 20, 2007. (Ex. D. Pg. 39, Ln 20-23). Plaintiff does not recall who the treating dentist was at this time (Ex. D. Pg. 40 Ln. 20-23).

ANSWER: Plaintiff admits that he was seen by a dentist during this period. However, the Plaintiff denies that he received treatment for his TMJ during this time. (See attached Ex. A, Pg. 5).

19. Between September 13, 2005, and December 20, 2007, Plaintiff was seen by the Health Care Unit ("HCU") for treatment of his head spams, headaches, and migraines. (Ex. D. Pg. 40, Ln 9-15). Plaintiff received Tylenol for these symptoms. (Ex. D, Pg. 41, Ln 2-5).

ANSWER: Admit

20. Plaintiff was seen by Defendant Mitchell, on April 11, 2008. (Ex. D. Pg. 43, Ln 11-15). Defendant Mitchell examined Plaintiff's mouth and told that Plaintiff that a tooth was causing issues in his mouth. Id. Defendant Mitchell referred Plaintiff to an oral surgeon to extract this tooth. (Ex. D. Pg. 45, Ln 22-23, Pg. 46, Ln 23-24, Pg 47, Ln 1). The tooth was extracted. (Ex. D. Pg. 49, Ln 21-22).

ANSWER: Admit

21. Defendant Mitchell saw Plaintiff again on May 30, 2008, at which time Plaintiff informed Defendant Mitchell that his night guard was broken. (Ex. D. Pg. 44, Ln 12-24). On June 30, 2008, Plaintiff

Was seen by Defendant Mitchell and fit for a new night guard. (Ex. D. Ps. 47, ln 24, Ps. 48, ln Ps. 49, ln 10-11). Plaintiff received the new night guard on August 15, 2008. (Ex. D. Ps. 51, ln 19-22).

ANSWER: Plaintiff admits that he was seen by Mitchell for his TMJ disorder and given a night guard.

22. Between August 20, 2008, and June, 2010, Plaintiff was seen by HCu medical professionals for spasms, headaches, and migraines. (Ex. D. Ps. 54, ln 13-24). He was provided with pain medication, muscle relaxers, and Tylenol to treat his symptoms (Id., Ex. D. Ps. 55, ln 1).

ANSWER: Admit. Plaintiff admits that he received pain medication and muscle relaxers one time during this time period. (See attached Exhibit-B, Ps. 8).

23. The Plaintiff was next seen by Defendant Fischman on June 18, 2012, and July 7, 2010, and July 15, 2010 (Ex. D. Ps. 55 ln 12-22) Ps. 58, ln 13-14, Ps. 59, ln 5). Defendant Fischman informed Plaintiff he does not treat TMD (Ex. D. Ps. 56, ln 16-22).

ANSWER: Admit.

24. Plaintiff saw Defendant Mitchell on February 14, 2011, (Ex. D. Ps. 59, ln 16-20). Defendant Mitchell explained that additional services including specialized treatment of TMD requires a referral as only basic treatment of TMD care is provided within the institution. (Ex. D. Ps. 60, ln 17-22, Ps. 61, ln 1-24, Ps. 62, ln 1-6).

ANSWER: Admit.

25. Plaintiff was seen by Defendant Fischman on April 6, 2011, and August 19, 2011, during which Plaintiff discussed pain near the TMJ (Ex. D., Ps. 63, ln 1-4, 14-23).

ANSWER: Plaintiff admits that he was seen by Fischman. However, the Plaintiff denies he discussed pain near his the TMJ. The Plaintiff complained about his TMJ (Id. ln 7-13)

26. Plaintiff was seen by Defendant Mitchell again on Dec. 2, 2011. (Ex. D. Ps. 67, ln 20-21). Defendant Mitchell prescribed Plaintiff a new night guard and pain medication (Ex. D. Ps. 68, ln 1-5). Plaintiff was fitted for the new night guard on December 14, 2011, by Defendant Mitchell. (Ex. D. Ps. 68, ln 18-20). At that time, Defendant Mitchell told Plaintiff that the medical director decides whether to refer an offender for follow-up care for TMD. (Ex. D. ps. 69, ln 11-15; Ex. B, para. 6; Ex. E, Ps. 91, ln 17-24).

ANSWER: Admits.

27. Plaintiff was seen by Defendant Mitchell on January 20, 2012, and received his new night guard and ibuprofen for his pain. (Ex. D. Ps. 71, ln 8-21).

ANSWER: Admit.

28. Plaintiff understands that treatment of TMD involves treatment beyond that of general dentistry. (Ex. D. Ps. 24, ln 16-24, Ps. 25, ln 1-3).

ANSWER: Admit.

29. There are no records, in Plaintiff's medical and dental file, where a medical professional relates the Plaintiff's headaches and spams to jaw pain. (Ex. D. pg. 29. In 14-24, pg. 30, In 1-2).

ANSWER: Deny. Medical professionals agreed that the Plaintiff's TMJ caused his headaches and spams (see attached Exhibit-B, pg. 8)(Also see Attached Exhibit-C, pg. 2.).

30. Plaintiff disagrees with the physicians at Stateville that a night guard should be used to treat his condition. (Ex. E. pg. 70, In 5-9).

ANSWER: Deny the Plaintiff does not disagree with treatment of a night guard for his condition. The Plaintiff was prescribed a night guard for over ten years. However, the night guard did not help with the Plaintiff's TMJ. In fact, the night hurt the Plaintiff's mouth. The Plaintiff disagress with receiving the same form of treatment repeatly for over ten years that was non effective. (See attached Exhibit-D).

31. The normal course of treatment a general dentist would follow, when an offender is complaining of TMJ pain, is to provide him with analgesics, or pain medication, which is designed to help relieve some of the pain. (Ex. B, para 2). Mortrin and Tylenol are considered an appropriate analgesic for the type of pain experience with temporomandibular Joint disorder ("TMD"). (Ex. B, para.3). Stateville Correctional Center

has Motrin and Tylenol available to offenders. Id.

ANSWER: The Plaintiff lacks the sufficient medical knowledge to agree or disagree. However, the Plaintiff does not dispute Mitchell's medical knowledge.

32. Defendant Mitchell is not a TMD specialist and has only received basic training in the TMD or TMD-related conditions as a student at the University of Illinois College of Dentistry. (Ex. B para 5). The training consisted of diagnosis of symptoms and palliative treatment such as analgesics, soft diet, warm compresses. night-guard, limiting the opening of the joint by not yawning widely and taking smaller bits of food. Id. If an offender requires more than palliative treatment for a TMJ concern, it becomes a medical issue and outside the scope of Defendant Mitchell's training. (Ex. B para. 5.). TMJ pain may involve chronic pain that continues for many years (Ex. B para. 6).

ANSWER: See supra 31. Plaintiff admits TMJ causes chronic pain that continues for many years.

33. Stateville Correctional Center does not employ a TMJ specialist. (Ex. B para 6). Basic treatment of TMD care is provided to the inmates in the Department of Corrections. Id. A referral is written for any offenders that need additional services including specialty services. Id. This referral is given by the medical director at the facility Id.

ANSWER: Dispute. Mitchell, although she lacked

the Knowledge and training to treat his TMJ disorder, she had the responsibility and authority, as the Plaintiff's treating Physician, to submit the Plaintiff for offsite treatment. (See attached Exhibit-E, paragraph 5)(also see attached Exhibit-F, pg 2, [F.3.b.(1)]). At the very least Mitchell should have referred the Plaintiff to the Medical Director, Dr. Carter.

34. The medical director at Stateville decides whether to refer an offender for follow-up care for TMD beyond that of palliative treatment (Ex. B Para. 6). The referral is based upon the medical director's decision on what services or what treatment an individual has or needs that is outside of general dentistry. Id.

ANSWER: Dispute. Mitchell had the responsibility to submit a referral for the Plaintiff to the Medical Director. See Supra 33. (also see attached Exhibit E, paragraph 4)

35. Upon Defendant Mitchell's review of Plaintiff's dental file, Offender Gray never indicated that his TMD problem was not being managed by the normal course of treatment; therefore he was never referred for additional services regarding TMD care (Ex. B Para. 6).

ANSWER: Dispute. The Plaintiff suffered from chronic TMD since 1999 (uncontested fact (9)). The only treatment the Plaintiff received was a night guard, which did not help. Mitchell's allegations that the Plaintiff never "indicated that his TMD problem was not being managed by the normal course of treatment" was never told to her is simply

an illogical and misleading declaration. The Plaintiff complained of his TMD as far back as September 6, 2001 (attached Exhibit-G). The Plaintiff started filing grievances about his TMD in the year 2002 (attached Exhibit-H). The complaints about the Plaintiff's TMD continued throughout the year 2003 (attached Exhibit-I). The

Plaintiff was repeatly requesting medical care for his TMD (attached Exhibit-A[See response to uncontested facts Paragraph 12 for dates], Exhibit-B[See response to uncontested facts Paragraph 12 for dates]. In additions the Plaintiff filed grievances against Mitchell for failing to treat his TMD, where the Plaintiff complained that his TMD had worsen and that he was in constent pain (attached Exhibit-J, pg. 2-4). The Plaintiff also filed grievances requesting to be sent to a TMJ specialist because the Plaintiff's TMJ Joints were losing mobility (Id. pg. 5-6). Mitchell answered the Plaintiff's grievances and were aware of the Plaintiff's complains about his lack of TMD treatment and the pain that the Plaintiff was in (See attached Exhibit-K).

    36. Plaintiff filed several emergency grievances directed to Defendant Hardy explaining that he was not receiving medical treatment, wrote several letters to Defendant Hardy, and stated he told Defendant Hardy about his medical Condition as Defendant Hardy was walking through Plaintiff's Cell house. (EX. E. Pg. 93, ln 7-23, Pg. 92 ln 1-23). Defendant Hardy

denied Plaintiff's emergency grievances, as an emergency was unsubstantiated. Id. Plaintiff states he wrote letters to Defendant Edwards and also spoke with Defendant Edwards about this medical condition. (Ex. E. ßs. 125, ln 14-21, ß. 126, ln 1-17).

        <u>ANSWER:</u> Admit

       37. One of Defendant Sheehy's duties as a medical technician was to schedule offenders for sick call in the HCU. (Ex. C Para. 2; Ex. E. ß. 103, ln 14-16) When Defendant Sheehy received a written request from an offender, he the scheduled the inmate for the first available appointment, depending on the doctor's work schedule and appointment availability within the schedule. (Ex. C Para 2). If an offender was requesting to see a dentist, the request was then forwarded on to the Dental Office. Id. Defendant Sheehy was the only avenue by which Plaintiff could request medical care. (Ex. E, ß. 103, ln 14-16).

        <u>ANSWER:</u> Plaintiff admits Sheehy schedules offenders for sick call. Otherwise the Plaintiff admits.

38. Plaintiff admits he was seen by health care Professionals and dental Professionals during the times he alleges Defendant Sheehy did not place him on the sick call to be seen by a health care professional. (EX. E, Pg. 112, ln 6-19, Pg. 113, ln 4-16, Pg. 117, ln 10-13, Pg. 119, ln 5-24).

ANSWER: Dispute. The Plaintiff was not being treated for his TMJ, headaches, migraines, and head spasms during the time he was requesting Sheehy Schedule him for Sick Call. The Plaintiff filed grievances requesting medical treatment (see attached Exhibit-L and Exhibit-J, Pg 1-4). The Plaintiff also submitted requests to Sheehy requesting medical treatment (attached Exhibit M, para. 2-4, and pg. 3).

DOI AKAH GRAY
PLAINTIFF
PRO SE

15

## ADDITIONAL MATERIAL FACTS

1. Defendant DR. JACQUELINE MITCHELL-LAWSHEA, D.D.S ("Dr. Mitchell") have been employed at Stateville since february 18, 2002, to the present. (Plaintiff's Response to Defendants' Statement of facts ["Pl's R. Def's SOF, Exhibit-Q, paragraph ["Para"] 2 (a)).

2. An offender may request a grievance be handled on an emeregency basis by filing the grievance directly to the Warden (See Illinois Administrative Code, Section 504. 840)

3. WARDEN MARCUS HARDY ("Hardy") had the authority to place an inmate on the sick call list for medical and dental treatment (Pl's R. SOF. Exhibit-S. Para (12)).

4. The Plaintiff filed four medical emergency grievances to Hardy requesting treatment for his TMD and notifying Hardy that the Plaintiff was in severe pain and that he was being ignored by the medical Staff. The grievances were filed on October 4, 2011, October 13, 2011, October 20, 2011, and December 23, 2011 (Pl's R. Def. SOF. Exhibit-J, Ps. 1-5).

5. Hardy, signed off on the Plaintiff's medical emergency grievances. (Pl's R. Def. SOF. Exhibit-J, Ps. 1-5).

1

6. The Plaintiff's emergency grievances notified Hardy that the Plaintiff's Temporomandibular Joint Disorder ("TMD") had worsened and that the Plaintiff was being ignored by the healthcare providers at Stateville although the Plaintiff's TMD was causing the Plaintiff to endure facial swelling, popping of the Jaw, loss of Temporomandibular Joint ("TMJ") mobility and restriction of Jaw motion and headspams (Pl's R. Def. SOF, Exhibit-J, pgs. 1-5).

7. On June 30, 1999, the Plaintiff reported to healthcare providers at Stateville that he suffered from TMJ pain (Pl's R. Def. SOF, Exhibit-B, pg. 1). On January 7, 2000, the Plaintiff reported to healthcare providers at Stateville that he was having headaches several days a week. (Pl's R. Def. SOF, Exhibit-B, pg. 2).

8. On July 13, 2000, the Plaintiff reported to healthcare providers that he was suffering from TMJ pain (Pl's. R. Def. SOF, Exhibit-B, pg. 2). On January 12, 2001, the Plaintiff reported to healthcare at Stateville that he suffered from TMJ pain (Pl's R. Def. SOF, Exhibit-B, pg. 3) and headspams (Id. Exhibit-B, pg. 3).

2

9. On Febuary 22, 2001, the Plaintiff reported to health care providers at Stateville that he suffered from TMJ pain (Pl's. R. Def. SOF, Exhibit-B, pg 4). On June 20, 2001, the Plaintiff reported to healthcare providers at Stateville that he suffered from TMJ pain (Pl's R. Def. SOF, Exhibit-B, pg 6).

10. On July 12, 2001, the Plaintiff reported to healthcare providers that he suffered from TMJ pain (Pl's. R. Def. SOF, Exhibit-B, pg 6) On June 26, 2001, the Plaintiff reported to healthcare providers at Stateville that he suffered from TMJ pain (Pl's. R. Def. SOF, Exhibit-B, pg 7).

11. On February 13, 2010, the Plaintiff reported to health care providers at Stateville, that he was having an increase of headspams (Pl's R. Def. SOF, Exhibit-B, pg. 8). On February 17, 2010, the Plaintiff reported to healthcare providers at Stateville that he was having an increase of headaches, mirgaines, headspams, and suffered from TMD for (10) ten years (Pl's R. Def. SOF Exhibit-B, pg. 8). The Plaintiff was told by the healthcare provider, Lotanya Williams that his TMD is causing the Plaintiff's headachs, mirgains and headspams to increase (Pl's. R. Def. SOF, Exhibit-B, pg. 8).

12. On September 28, 2001, The Plaintiff reported that he suffered from TMJ pain to Stateville's dental department. (Pl's R. Def. SOF, Exhibit-A, pg 3). Dr. Rowe, D.O.S performed a TMJ

evaluation on the Plaintiff and diagnosed the Plaintiff with Bruxism, (Pl's R. Def. SOF, Exhibit - G).

13. On October 7, 2002, the Plaintiff reported pain in both sides of his TMJ joints to Stateville's dental department, Dr. O'Brien, D.D.S (Pl's R. Def. SOF, Exhibit - A, pg. 3). On November 26, 2002, the Plaintiff reported to Stateville's dental department that he was suffering from TMJ pain (Pl's R. Def. SOF, Exhibit - A, pg. 4).

14. On April 18, 2003, the Plaintiff reported to Stateville's dental department that he suffered from TMJ pain (Pl's R. Def. SOF, Exhibit - A, pg. 4). On April 23, 2003, the Plaintiff was seen by Stateville's dental department for TMJ pain and traumatic occlusion of the Plaintiff's teeth caused by his Bruxism (Pl's R. Def. SOF, Exhibit - A, pg. 4). On May 2, 2003, the Plaintiff was suffering increased TMJ pain. Stateville's dental department notified the Plaintiff that he had a traumatic occlusion caused by his Bruxism that creates his TMJ pain (Pl's R. Def. SOF, Exhibit - A, pg. 4)

15. On November 21, 2003, the Plaintiff reported to Stateville's dental department that he was suffering from TMJ pain (Pl's R. Def. SOF, Exhibit - A, pg. 4). On December 23, 2003, the Plaintiff reported to Stateville's dental department that he was suffering from severe TMJ pain and that his night guard was non effective

and does not help with the Plaintiff's Bruxism and TMD. The Plaintiff also reported that his TMJ hurts so much that he could not eat his food (Pl's R. Def. SOF, Exhibit-A, pg. 4). In addition, on December 23, 2003, Stateville's dental department diagnosed the Plaintiff with an open bite and occlusion of teeth numbers 1, 32, 16, and 17 (Pl's R. Def. SOF, Exhibit-A, pg. 4).

17. On June 4, 2004, August 9, 2004, and September 17, 2004, the Plaintiff was notified by Stateville's dental department that his TMJ pain and TMD is caused by trauma to his mouth caused by the Plaintiff's Bruxism (Pl's R. Def. SOF, Exhibit-A, pg. 5). On September 13, 2005, the Plaintiff was seen by Stateville's dental department for his TMD and trauma to the Plaintiff's mouth caused by his Bruxism (Pl's R. Def. SOF, Exhibit-A, pg. 5).

18. On December 20, 2007, the Plaintiff reported to the dental department at Stateville that he suffered from chronic TMD and that he was in pain. The dental department determined that the Plaintiff had trauma to his mouth caused by the Plaintiff's Bruxism (Pl's R. Def. SOF, Exhibit-A, pg. 5). On April 11, 2008, the Plaintiff reported to Stateville's dental department that he was suffering from severe TMJ pain. The dental department determined the Plaintiff had trauma to his mouth caused by his Bruxism (Pl's R. Def. SOF, Exhibit-A, pg. 5).

19. On May 30, 2008, the Plaintiff reported to Dr. Mitchell that he suffered from chronic TMJ pain for (9) nine years. The Plaintiff also notified Dr. Mitchell that he has been prescribed numerous night guards and the night guards were noneffective and did not help with the Plaintiff's Bruxism and TMJ pain. Pl's R. Def. SOF, Exhibit-A, pg. 6; Exhibit-R, Pl's affidavit, para (11)).

20. On June 27, 2008, the Plaintiff notified Dr. Mitchell that his TMD was causing him severe pain, headaches, and facial pain. The Plaintiff notified Dr. Mitchell that the night guards were noneffective, hurt the Plaintiff's mouth, and did not help with the Plaintiff's Bruxism and TMD pain. (Pl's R. Def's SOF, Exhibit-A, pg. 6; Exhibit-R, para (36)).

21. On August 15, 2008, the Plaintiff notified Dr. Mitchell that he was suffering from severe TMJ pain, headaches, and facial pain. The Plaintiff notified Dr. Mitchell again that night guards do not help with the Plaintiff's Bruxism, TMJ pain, and the guards hurt the Plaintiff's mouth (Pl's R. Def's SOF-Exhibit-A, pg. 6; Exhibit-R, para (36)).

22. On September 30, 2008, the Plaintiff was seen by Dr. Mitchell for his TMD. The Plaintiff requested treatment for his TMD that goes beyond a night guard. The Plaintiff asked for orthodontics. The Plaintiff was notified that orthodontics are not available to inmates in the Illinois Department of Corrections (IDOC). Dr. Mitchell notified the Plaintiff that no matter how much pain the Plaintiff was enduring

he would not receive any treatment beyond a night guard because TMD is a nontreatable condition (Defendant's SOF. Exhibit-O, Ps. 24, ln 2-13; Ps. 26, ln 21-23; Ps. 52 ln 4-24; Ps. 51, ln 23-24; Ps. 60, ln 1-2).

23. On February 14, 2011, the Plaintiff requested an appointment with Dr. Mitchell for treatment for his TMD. By this time the Plaintiff's TMD had severely declined (Pl's R. Def's SOF. Exhibit-A, Ps. 7). The Plaintiff was enduring daily headaches, daily migraines, and headspams every other day (Pl's R. Def's SOF, Exhibit-R, para(8). The Plaintiff was enduring facial swelling, neck pain, and dysfunction of his TMJ (Id. Exhibit-R, para (4)).

24. Dr. Mitchell did not schedule the Plaintiff for an appointment although she was aware that the Plaintiff requested an exam for his TMD and Dr. Mitchell noted the request in the Plaintiff's dental chart (Pl's R. Def's SOF, Exhibit-A, Ps. 7).

25. On December 2, 2011, the Plaintiff was seen by Dr. Mitchell for a bi-annual dental exam. The Plaintiff notified Dr. Mitchell about the severe decline that his TMD condition had taken. The Plaintiff notified Dr. Mitchell that he has suffered from chronic TMD for twelve years and that the Plaintiff was enduring daily headaches, daily migraines and headspams every          day. In addition, the Plaintiff

notified Dr. Mitchell that it takes the Plaintiff approximately 30 minutes in the morning to get his mouth to open as well as excruciating pain in the face, TMJ, neck, Jaws and head, coupled with facial swelling and 24 hours of constant chronic pain in the TMJ (Pl's R. Def's SOF; Exhibit-R, Para (8-10; 13-15); Pl's R. Def's SOF, Exhibit-A pg. 8)

26. On December 2, 2011, the Plaintiff notified Dr. Mitchell that he has had many night guards, and that she has prescribed the Plaintiff several night guards her self to the Plaintiff, and that the night guards were noneffective for the Plaintiff's Bruxism and TMD and have never helped with the TMJ pain. The Plaintiff reiterated to Dr. Mitchell that he is in constant pain and his Jaws lock close (Pl's R. Def's SOF, Exhibit-R, Para (15)).

27. On December 14, 2011, the Plaintiff notified Dr. Mitchell about his TMD and the severe decline that his TMD had taken. The Plaintiff once again notified Dr. Mitchell that night guards were noneffective for his Bruxism and TMD and that the night guards hurt the Plaintiff's mouth (Pl's R. Def's SOF, Exhibit-R, Para (16). The Plaintiff continued to complain to Dr. Mitchell about the severity of his TMD. At this time Dr. Mitchell confessed to the Plaintiff that she does not know how to treat chronic

TMD and that the only treatment she will give the Plaintiff is another night guard (Pl's R. Def's SOF, Exhibit-R, Para (17)).

28. On December 14, 2011, the Plaintiff requested Dr. Mitchell submit the Plaintiff for treatment by a TMD expert (Pl's R. SOF, Exhibit-R, Para (18). Dr. Mitchell agreed that the Plaintiff's Chronic TMD has to be treated by a TMD expert. However, Dr. Mitchell stated she would not submit the Plaintiff for off-site treatment by a TMD expert. Dr. Mitchell stated it would be a waste of time to submit the Plaintiff for off site treatment because Wexford Health Sources, Inc would deny the request (Id. Exhibit-R, Para (19)). But Dr. Mitchell told the Plaintiff he would have to contact Dr. IMHOTEP CARTER ("Dr. Carter") (Id. Exhibit R, Para (20)).

29. On January 20, 2012, the Plaintiff was seen by Dr. Mitchell. The Plaintiff notified Dr. Mitchell that he was suffering from extreme TMJ pain and needed TMD treatment. The Plaintiff notified Dr. Mitchell that night guards do not help with the Plaintiff's Bruxism, TMD, and TMJ pain. Dr. Mitchell told the Plaintiff that she will only give the night guard even if it does not help because that is all she will do for the Plaintiff despite how much pain the Plaintiff is in (Pl's R. Def's SOF, Exhibit-A Ps. 8).

30. On December 24, 2011, the Plaintiff filed a grievance demanding treatment for his Chronic TMD and to be sent to a TMD expert because the Plaintiff's TMD was causing the Plaintiff's mouth to shut down resulting in severe pain 24 hours a day (Pl's R. Def's SOF, Exhibit-J Pg.7). On February 15, 2012, Dr. Mitchell answered the Plaintiff's grievance. Dr. Mitchell ignored the Plaintiff's complaint of 24 hour pain and treatment by a TMD expert, and only stated the Plaintiff received his night guard and did not have to pay a $2.00 copayment (Pl's R. Def's. SOF, Exhibit-K, Pg.1-2).

31. Temporomandibular Joint disorder (TMD) or (TMJ) is an umbrella term covering acute or chronic pain in the mastication and/or inflammation of the temporomandibular Joints that connects the mandible to the skull (Pl's R. Def's SOF, Exhibit-C, Pg.1). The primary cause of TMD is muscular hyper- or parafunction from Bruxism (Id. Exhibit-C, Pg.1). TMD can result in significant pain. TMD transcends the boundaries between several health-care disciplines, particularly dentistry and neurology and has many treatment approaches (Id. Exhibit-C, Pg.1).

10

32. Symptoms associated with TMJ are clicking, popping sound when opening or closing the mouth, dull aching pain in the face, headaches, migraines, jaw pain, and reduced ability to open or close the mouth (Pl's R. Def's. SOF, Exhibit-C, Pg. 2). Pain in the TMJ is the most conventional signifier of TMD (Id. Exhibit-C, Pg. 2 [TMJ Section]). Disorders of the teeth can contribute to TMJ dysfunction (Id. Exhibit-C, Pg. 3 [teeth Section]).

33. Bruxism has been shown to be a contributory factor in the majority of TMD cases (Pl's R. Def's SOF, Exhibit-C, Pg. 3 [cause section] para (1-2)(7)). An improper equilibration may contribute to TMD (Id. Exhibit-C, Pg. 3 para (3)). Mal-alignment of the occlusal surfaces of the teeth may contribute to TMD (Pl's R. Def's SOF, Exhibit-C, Pg. 4). Extraction of wisdom teeth may contribute to TMD (Id. Exhibit-C, Pg. 3 para (8)).

34. Night guards are used to prevent nighttime clenching (Pl's R. Def's SOF, Exhibit-C, Pg. 4 [Splint Section]). When patients have a problem 24 hours a day 7 days a week the use of a nighttime appliance may not be the best treatment (Id. Exhibit-C, Pg. 4). Nighttime biofeed back can be used to reduce Bruxism (Id Exhibit-C Pg. 4 [Nighttime biofeed back Section]).

35. There are various treatment modalities which a well-trained experienced dentist may employ to relieve symptoms of TMD and improve joint function (Pl's R. Def's SOF, Exhibit - C, ps. 5). The National Institute of Dental Craniofacial Research (NIDCR) of the National Institutes of Health (NIH), found nightguards are a common but unproven treatment for TMD (Pl's R. Def's SOF, Exhibit - C, ps. 5).

36. Nightguards are to be worn for a short period of time (Pl's R. Def's SOF, Exhibit - P, ps. 2 Para 3)). TMD if not treated, will get worse and can lead to injury to the disc or other tissues in the joint and chronic pain (Pl's R. Def's SOF, Exhibit - P, ps. 3)

37. The Plaintiff's jaws lock close and are constantly tightening and stiffness in the Plaintiff's facial muscles (Def's SOF, Exhibit - D, ps. 8, ln 17-21). The Plaintiff's TMD continues to decline and the Plaintiff continues to have daily headaches, mirgains, and headspams (Def's SOF, Exhibit - D, ps. 14, ln 24; ps. 15, ln 1-2).

38. The Plaintiff has daily headaches, migraines, 24 hour pain, and headspams related to his TMD (Pl's R. Def's SOF, Exhibit - R. para (35)).

39. The Plaintiff was diagnosed with an open bite (Def's SOF, Exhibit - D, Ps. 32, ln 7-8). The Plaintiff's mouth does not close completely (Def's SOF. Exhibit - D, Ps. 32, ln 7-8, which is related to the Plaintiff's TMD (Id. Exhibit - D, Ps. 33, ln 17-24).

40. The Plaintiff has spoken to JOE SHEENY ("Sheeny") numerous times requesting treatment for his TMD (Def's SOF, Exhibit - E. Ps. 66, ln 14; Ps. 103, ln 3-11; 104, ln 1-2; Ps. 105, ln 14-16; Pl's Complaint, Exhibit - E, Exhibit - I).

41. The Plaintiff submitted medical requests to Sheehy for medical treatment of his TMD and placement on the medical sick-call list (Def's SOF, Exhibit - E. Ps. 6, ln 13-15; Pl's Complaint, Exhibit - E, Exhibit - I).

42. The Plaintiff filed a grievance on August 25, 2011, requesting medical treatment and placement on the sick-call list (Pl's R. Def's SOF, Exhibit - L)

43. Sheeny never scheduled the Plaintiff for sick-call for his treatment of his TMD, headaches, migraines, and headspams (Def's SOF, Exhibit - E. Ps. 105, ln 14-16; Ps. 106, ln 21-24; Ps. 113, ln 4-13)

44. The Plaintiff was seen by Dr. STEVEN FISCHMAN ("Dr. Fischman") at least three times. The Plaintiff requested treatment for his TMD. The Plaintiff notified Dr. Fischman that he suffered from Chronic TMD and was suffering from severe TMJ pain, daily headaches, migraines, and headspams (Pl's R. Def's. SOF, Exhibit-R, Para (22)).

45. Dr. Fischman told the Plaintiff that he does not treat TMD and despite how much pain the Plaintiff was enduring he would do nothing to help the Plaintiff get treatment for his TMD (Pl's R. Def's SOF, Exhibit-R, Para (22)).

46. Dr. Fischman refused to provide the Plaintiff with pain medication to help with the Plaintiff's pain, headaches, migraines, and headspams, and TMD (A's R. Def's SOF, Exhibit-R, Para (23)).

47. On October 5, 2011, the Plaintiff submitted a letter to WARDEN DARRYL EDWARDS ("Edwards") to have the medical staff provide the Plaintiff with medical treatment for his TMD (Pl's R. Def's' SOF, Exhibit-R, Para (28)).

48. The Plaintiff personally spoke to Edwards face to face and told Edwards that he was not receiving medical treatment for his painful TMD. Edwards did nothing to help the Plaintiff receive medical treatment (Pl's R. Def's. SOF, Exhibit-R, Para (29)).

49. Dr. Mitchell is aware that Bruxism contribute to TMJ (Pl's R. Def's SOF, Exhibit-Q para (14)(b)). Dr. Mitchell is aware that careful examination of the Tempormandibular Joints and occlusion is a critical step before a specific treatment plan is provided for TMJ (Pl's R. Def's SOF, Exhibit-Q, Para (13)(a)).

50. Dr. Mitchell is aware that Xrays, Computer Tomography scan ("CT"), and Magnetic Resonance Imaging ("MRI") tests used to determine the condition of TMJ are conducted outside of Stateville at the University of Chicago Illinois Hospital ("UIC") TMJ Clinic (Pl's R. Def's SOF, Exhibit-Q, Para (13)(C)).

51. Dr. Mitchell is aware that inmates who suffer from Chronic TMD and need more specific care are referred to the UIC's TMJ Clinic (Pl's R. Def's SOF, Exhibit-Q, Para (13)(C))

52. Dr. Mitchell provides inmates who suffer from Bruxism and/or TMD with warm compress to the Joint and face, observation of changing oral chewing hibits and face, analgesic for pain and muscle relaxant (Pl's R. Def's SOF, Exhibit-Q, para (14)(e)).

53. Dr. Mitchell is aware that for a proper diagnosis and treatment plan for TMD and/or Bruxism, a patient may require medical evaluations from multiple medical personnel who treat these conditions (Pl's R. Def's SOF, Exhibit-Q Para (18)(b)).

54. For an inmate to receive off-site dental care at a hospital and/or specialist Dr. Mitchell writes a referral to the Medical Director (Pl's R. Def's SOF, Exhibit - Q, para (19)(a)). The criterion for submitting an inmate for treatment off-site by a specialist is when basic care for TMJ does not resolve symptoms a referral is submitted for outside specialists (Pl's R. Defs SOF, Exhibit - Q para (19)(c)).

55. Dr. Mitchell, who has been a dentist at Stateville for 12 years, does not know any dentist as Stateville who have the experience to treat TMJ (Pl's R. Def's SOF, Exhibit - Q, para (20)(a)).

56. Wexford and/or Stateville do not have an onsite Pain Management Clinic to treat inmates who suffer from long term TMD and/or Bruxism (Pl's R. Def's SOF, Exhibit - Q, para (21)(c)(d)(e)).

EXHIBIT-A

**STATE OF ILLINOIS — DEPARTMENT OF CORRECTIONS**

860000

Inmate/Student Name

Inmate/Student I.D. K70373    GRAY, DOIAKAH

DOB: / /

Reception Facility    Age:

Sex: M

Panore:    Race: BLK

JRC 12/22/98

1

□ ...schedule routine exam at receiving institution ... nediately at R&C

□ Schedule immediately at receiving institution

Screening DDS sig    _Jacqueline 7 Miller DDS_

**Public Health Classification Screening Dates**

| | | Pathology |
|---|---|---|
| ndodontics | | |
| ...ral Surgery | | |
| ...rtodontics | | |
| ...perative | STA | |
| ...rosthetic | | 30 |

**MEDICAL HISTORY AND REMARKS**

...receiving Inst. STA

Dentist _O Brian_

Date 10/04/08

| | Yes | No | Current Medication |
|---|---|---|---|
| ...rdio Vascular Disease | | | |
| ...ulmonary Disease/Asthma | | | |
| ...iabetes | | | |
| ...ilepsy | | | |
| ...epatitis | | | |
| ...I.D. (Type | | | |
| ...llergies (Type | | | |

**JUVENILE**

Existing Restorations and Missing Teeth

Treatment Needed and Completed Restorations

TREATMENT NEEDED - COMPLETED RESTORATIONS

1·2/08 update delete
11/00 update

1  2  3  4  5  6  7  8  9  10  11  12  13  14  15  16  17

32  31  30  29  28  27  26  25  24  23  22  21  20  19  18  17

**ADULT**

**EXISTING RESTORATIONS & MISSING TEETH**

1  2  3  4  5  6  7  8  9  10  11  12  13  14  15  16

32  31  30  29  28  27  26  25  24  23  22  21  20  19  18  17

660000

| Date | Service Rendered | D.D.S. Signature | Date | Service Rendered | D.D.S. Signature |
|---|---|---|---|---|---|
| | | | 6/1/99 | #18 O Amal | |
| | | | 7/1/99 | 2 Left lic work | |
| | | | | soft line Rev | |
| 1/27/99 | O.M.L.S.S. | | 7/14/99 | | |
| | Review denture | | | | |
| | F.U. Awl | | | | |
| | | | 12/9/99 | R.C.T. | |
| | | | 12/9/99 | 5 | |
| 3-20-99 | RES Ext #1205 due | | | | |
| | to lockdown | | | DENTAL EXAM | |
| 5/21/99 | | | | Chg Given Panorex | |
| | | | | N.V. Amal | |
| | N.V. Dent | | 2.6.01 | #15. O Amal | |
| | Endod | | | N.V. B Scale | |

000101

| Date | Service Rendered | D.D.S. Signature | Date | Service Rendered | D.D.S. Signature |
|---|---|---|---|---|---|
| 8/24/01 | **LOCK DOWN:** No contact this date. Will be rescheduled. | | 3/29/02 | *(illegible)* | *(illegible)* DDS |
| 9/6/01 | *(illegible)* | | 8/27/02 | *(illegible)* | *(illegible)* |
| | | | 8/30/02 | Pt to be seen *(illegible)* 6 *(illegible)* Evaluation *(illegible)* | *(illegible)* D.D.S. |
| | | *(illegible)* | 10/7/02 | *(illegible)* | |
| 10/25/01 | *(illegible)* | | 10/21/02 | *(illegible)* | DDS *(illegible)* |

*(handwritten notes at bottom, illegible)*

DC 7126 (Rev. 10/87)
IL 424-0018

000105

| Date | Service Rendered | D.D.S. Signature | Date | Service Rendered | D.D.S. Signature |
|---|---|---|---|---|---|
| 11/26/02 | | | 12/21/03 | | |
| | | | | | |
| 4/18/03 | | | 12/23/03 | | |
| 11/22/03 | | | | | |
| | | | 1/16/04 | | |
| 5-20-03 | | | 3-27-04 | | |
| | | | 2-3-04 | | |
| 11/21/03 | | | 9/18/04 | | |

DC-7136 (Rev. 10/87)
IL 426-0018

000103

| Date | Service Rendered | D.D.S. Signature | Date | Service Rendered | D.D.S. Signature |
|---|---|---|---|---|---|
| 6-24-04 | Exit #17 temporary fill Mandn/sdation #11 filling #12 filling #17 appointment Vacated | | 10-8-07 | Resident has been housed at A/C OS/T social | |
| 8/9/04 | | C. Price | 7-25-07 | #3 occl obturated palliative | |
| 9-14-04 4:30 | V, consent D S/out asymptomatic #32 bulum #32 buccal swelling retracted on the asymptomatic WK | | 7-28-07 | NU 31, 30 + 31 No probs NU Patient S to #32, gotten won't come yes buy line to month Pt is tender wisden #32 that elliptical referred to S/F line bicuspid | |
| 8/25/05 Resurge apptd | light to mod d/s elegant | E.A. Crowe | 1-16-08 | NU 20 + 31 elliptate stabilized for #20,16 Administring ½ carp NU 1/100 EPI Ild L eye #20 Ild 30+ 31 #30 occured alloy #31 bucal alloy NU #3 so alloy sealer appd #16 2008 | Jeldado EpI 3.00 epI/day |
| 5/24/05 apptd | Pt educ apptd for #20 ext #32 NU 21 ext #32 9/13/05 | Sdant | 4-11-08 | Pt c/o pain radiating #32 #32-periax smith & Nm-maxmional Causing Trauma #32_0 RR X-ray dme | |
| 9-13-05 205 | Patient has been maint/on the loc/mdication/instructed at this time | (illegible) | | #32-Ext dme Consent POI, No-sutture, Lido 1:100K 24 2 carps Perm/VC swing, NV, E, Scale Max timmeg Premaline | |
| 5/24/06 apptd | Pt dismissed apptd no shows #32 | Sudnt | | | |
| 11-3-06 | Biannual exam Pano-4 filmy CHT Caries as charted NV Fill #3 on list | (illegible) | | | |

DC 2124 (Rev. 10/87)
IL 424-2013

| Date | Service Rendered | D.D.S. Signature | Date | Service Rendered | D.D.S. Signature |
|------|------------------|------------------|------|------------------|------------------|
| 3/30/6? | Green teeth lube | | 9/30/08 | no adjustment to partial within 60 day | |
| Dec 25 | light adjust to stop | | 11/6/Y | W/ buccs surface | |
| app | adjust to stop left lw | | | (loc) 3/9/09 #10-#12 loc 2-0 | |
| teeth | repeat TMJ discomfort | | 3/9/09 | #14-0 Indus | |
| | both sides | | no adj. | 7/13 no adj to buccal surf | |
| | Pt has TMJ appliance | | | #17 FM #3-0 M#17#( | |
| | that has buccal surf | | | 7-13-09 | 3/9/09 |
| | no bear sign to repeat | | 3/4/09 | PM #14-0 Amal | |
| | it is not w/in the | | | Pt has complaint | |
| | slightly loose to Dr S. w/ | | | of sensitivity but nunb | |
| | surf Dr S to recount | | | sensitive | |
| 6/27/08 | no tell pt de b/w appliance | | | (loc) FM #3-0 | |
| | to mix appt pt de recount | | | 7/13/09 | |
| 6/27/08 | pt complain | | 7/13/09 | appt rescheduled | |
| | of bite pain | | | due to no show | C. Brick |
| | to adjust | | 8/27/09 | 8/19/09 | |
| | no surf to repeat | | | referral recall | |
| 8/15/08 | pt to recount | | | reviewed | |
| | w/ no adjust | | 10/19/09 | 10/19/09 | |
| | Dr pt voluntarily | | 9/12/05 | Biomax Recall | |
| | to Dr pulloosh | | | in hospital | |
| | 9/30/08 | | | | 10/15/05 |
| 9/30/08 | Pt of this recall | | | | |
| | w/no I complained | | | | |
| | adjust at locality | | | | |
| | unfavorable | | | | |
| | I do equally | | | | |
| | to adjust at flossing | | | | |

DC 7126 (Rev. 10/87)
IL 426-0018

601·000

| Date | Service Rendered | D.D.S. Signature | Date | Service Rendered | D.D.S. Signature |
|------|------------------|------------------|------|------------------|------------------|
| | | | | | |

DC 7176 (Rev. 10/87)
IL 426-0018

000111

| Date | Service Rendered | D.D.S. Signature | Date | Service Rendered | D.D.S. Signature |
|---|---|---|---|---|---|
| 12/2/2011 | *[illegible handwritten notes]* | *[signature]* | | | |
| 12/14/2011 | *[illegible handwritten notes]* | *[signature]* | | | |
| 1/20/2012 | *[illegible handwritten notes]* | *[signature]* | | | |
| 3/1/2012 | *[illegible handwritten notes]* | *[signature]* | | | |

DC 7126 (Rev. 10/87)
IL 426-0018

EXHIBIT-B

**STATE OF ILLINOIS - DEPARTMENT OF CORRECTIONS**

K70373    GRAY, DOIAKAH
Age:                              DOB:    /   /
Race: BLK                      Sex: M
JRC 12/22/98

Facility        ET
                NAL CENTER

Inmate's Name _____                          1 _____

| Date/Time | S O A | PLANS |
|-----------|-------|-------|
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |

DC 7147 (3-84)
IL 426-0017

000021

STATE OF ILLINOIS - DEPARTMENT OF CORRECTIONS

## MEDICAL PROGRESS NOTES

Resident's Name: _Cruz Doiakon_    Resident's Number: _K 70373_

| DATE/TIME | PROBLEM # | S.O.A. | PLANS |
|---|---|---|---|
| 11 Mar 00 | | S. Tine | 1. TI8 PRN |
| | 15 | Deen bing | 2. Diet |
| | P?? | headaches | 3 milk |
| | 7:00 | Can Bu 3 3y to | 3. Avail |
| | P?6 | i~ Mro | i mis |
| | R18 | Ad wx3 vss | d limd |
| | | Neest wvc | |
| | | Perla | |
| | | bo Canhilahi | |
| | | hx | |
| | | 1) Teroicc | CONFIDENTIAL MEDICAL INFORMATION NOT FOR REDISCLOSURE |
| | | headaches | |
| | | E hedran | |
| | | whon | 2. |
| | | | nr5 |
| 7.13.2000 | | my note. | |
| 12:10 PM | | S. Pt. c flu Sx | 1 Tobramin 50y |
| | | (R) TMJ pain x 2 days | to BID #20 |
| | | hx for P/4 | 2. Hot puls |
| | | Denies Dental pains. | TTD x 7d |
| | | O. Ro c 3 vss ipl | 3. RTC - PRN. |
| | | Mi - (R) TMJ minin | |
| | | tndernss to palpation | ⊗ |
| | | full ROM. | |
| | | A. M/ Muscular pain vs TMJ (R) strain | |

Resident's Name _____

Resident's Number K 70313

| DATE/ TIME | PROB- LEM # | S.O.A. | PLANS |
|---|---|---|---|
| 1/12/11 | | CHT NOTE | ① _illegible_ - _illegible_ |
| | 5 | "I'm having some | ② Call _illegible_ |
| | | type of opening 2-5 | to _illegible_ |
| | | _illegible_ at _illegible_ temple | ③ fluids |
| | O | _illegible_ on | ④ Tylenol _illegible_ tab |
| | | bed _illegible_ blurred | _illegible_ 4-6 hrs PRN |
| | | vision. Hand on | ⑥ Referred _illegible_ |
| | | Rt. eye PERL | Dr. _illegible_ |
| | | T 99.2 _illegible_ P/P 137/22 | ⑦ Refer to HCU |
| | | R 20 _illegible_ medical Hx a | PRN |
| | | _illegible_ Hx of smoking | |
| | | _illegible_ 23 _illegible_ opioid | |
| | | _illegible_ | |
| | A | Discomfort of right | |
| | | temple pain | |
| | | | _illegible_ CHT |

000030

| DATE/ TIME | PROB- LEM # | S.O.A. | PLANS |
|---|---|---|---|
| 1/25 1st | 9am | *(illegible handwritten notes)* | *(illegible)* |
| 1-25-01 12 | | *(illegible handwritten notes)* | |

CONFIDENTIAL
MEDICAL INFORMATION
NOT FOR REDISCLOSURE

STATE OF ILLINOIS - DEPARTMENT OF CORRECTIONS

**MEDICAL PROGRESS NOTES**

| Facility |
| --- |
| STATEVILLE C.C. |

Inmate's Name _____ Inmate's Number _____

| Date/Time | S O A | PLANS |
| --- | --- | --- |
| 2/22/ | _[illegible handwriting]_ | |
| | _[illegible handwriting]_ | |
| | _[illegible handwriting]_ | |
| 2-22- | _[illegible handwriting]_ | _[illegible handwriting]_ |
| 12" | | |
| | | |

OC 7147 (3-84)
IL 428-0017

000027

**STATE OF ILLINOIS - DEPARTMENT OF CORRECTIONS**

**MEDICAL PROGRESS NOTES**

| Facility |
|---|
| STATEVILLE C.C. |

Inmate's Name _____ Inmate's Number _____

| Date/Time | S O A | PLANS |
|---|---|---|
| 6/21/04 | *[handwritten notes]* | |
| | *[handwritten notes]* | *[handwritten notes]* |
| 6/11/01 | No show M.D. | |
| 7/23/01 | *[handwritten notes]* | *[handwritten notes]* |

DC 7147 (5-84)
IL 426-0017

STATE OF ILLINOIS  DEPARTMENT OF CORRECTIONS

**MEDICAL PROGRESS NOTES**

Resident's Name _CRAP_

Facility _____

Resident's Number _K70373_

| DATE/ TIME | PROB-LEM # | S.O.A. | PLANS |
|---|---|---|---|
| | 9A | | |
| 6-06 | 5A | MD Note | |
| | | | |
| 7-9 | | | |

IL 426-8909, DC 7147

000029

ILLINOIS DEPARTMENT OF CORRECTIONS

**Offender Outpatient Progress Notes**

**Stateville Correctional Center**

Offender Information:

Last Name: _Gray_  First Name: _D_  MI: ___

ID#: _K70373_

| Date/Time | Subjective, Objective, Assessment | Plans |
|---|---|---|
| 2/13/10 9A | Per letter pt c/o L side head pains c pulsating at temple. ⊕ HTN Hx. ⊘ IDDM Hx. 22 yo Blk male | MD/SC W. Obs |
| 4/17/10 185 lbs 137/70 BP 71 HR 97.1 T 16 RR | PA NOTE  10¹⁰ A spasm in my R temple off and on x 2 wks c HA "5 on scale of 10, I grind my teeth and have issue c TMJ x 10 yrs. Also felt hurting L pinkie P/O wrist still painful. R hand dominant O = gen = wnl, nad Heent bymphead Heent = wnl Neuro = wnl A = 1. TMJ (Grnd S/E) 3. HA | 1. Flexeril 10 mg c BID os gx plus ½ 30 x 30 ea 2. Tylenol 325 c or 2 q 6-8° plus pain x 2 ea 3. RTC flu 1 w/o 4. x-ray c L Hand c one view f/u 5. |

EXHIBIT-C

# Temporomandibular joint disorder

From Wikipedia, the free encyclopedia

| Temporomandibular joint disorder | |
|---|---|
| *Classification and external resources* | |
|  Temporomandibular joint | |
| **ICD-10** | K07.6 (http://apps.who.int/classifications/icd10/browse/2010/en#/K07.6) |
| **ICD-9** | 524.60 (http://www.icd9data.com/getICD9Code.ashx?icd9=524.60) |
| **DiseasesDB** | 12934 (http://www.diseasesdatabase.com/ddb12934.htm) |
| **MedlinePlus** | 001227 (http://www.nlm.nih.gov/medlineplus/ency/article/001227.htm) |
| **eMedicine** | neuro/366 (http://www.emedicine.com/neuro/topic366.htm) radio/679 (http://www.emedicine.com/radio/topic679.htm#) emerg/569 (http://www.emedicine.com/emerg/topic569.htm#) |
| **MeSH** | *C05.500.607.221.897.897 (http://www.nlm.nih.gov/cgi/mesh/2012/MB_cgi? mode=&term=Temporomandibular+Joint+Dysfunction+Syndrome&field=entry#TreeC05.500.607.221.897.897)* |

**Temporomandibular joint disorder, TMJD** (in the medical literature **TMD**), or **TMJ syndrome**, is an umbrella term covering acute or chronic pain, especially in the muscles of mastication and/or inflammation of the temporomandibular joint, which connects the mandible to the skull. The primary cause is muscular hyper- or parafunction, as in the case of bruxism, with secondary effects on the oral musculoskeletal system, like various types of displacement of the disc in the temporomandibular joint. The disorder and resultant dysfunction can result in significant pain, which is the most common TMD symptom, combined with impairment of function. Because the disorder transcends the boundaries between several health-care disciplines — in particular, dentistry and neurology — there are a variety of treatment approaches.

The temporomandibular joint is susceptible to many of the conditions that affect other joints in the body, including ankylosis, arthritis, trauma, dislocations, developmental anomalies, neoplasia and reactive lesions.[1]

An older name for the condition is "Costen's syndrome", after James B. Costen, who partially characterized it in 1934. [2][3][4][5]

Signs and symptoms of temporomandibular joint disorder vary in their presentation and can be very complex, but are often simple. On average the symptoms will involve more than one of the numerous TMJ components: muscles, nerves, tendons, ligaments, bones, connective tissue, and the teeth.[6] Ear pain associated with the swelling of proximal tissue is a symptom of temporomandibular joint disorder.

Symptoms associated with TMJ disorders may be:

- Blinking
- Biting or chewing difficulty or discomfort
- Clicking, popping, or grating sound when opening or closing the mouth
- Dull, aching pain in the face
- Earache (particularly in the morning)
- Headache (particularly in the morning)
- Hearing loss
- Migraine (particularly in the morning)
- Jaw pain or tenderness of the jaw
- Reduced ability to open or close the mouth
- Tinnitus
- Neck and shoulder pain
- Dizziness

## Contents

- 1 Temporomandibular joints
  - 1.1 Teeth
- 2 Cause
- 3 Treatment
  - 3.1 Restoration of the occlusal surfaces of the teeth
  - 3.2 Splint
  - 3.3 Nighttime biofeedback
  - 3.4 Pain relief
  - 3.5 Long-term approach
    - 3.5.1 Elimination of para-functional habits
    - 3.5.2 Reversible treatments
    - 3.5.3 Surgery
- 4 Jaw dislocation
- 5 See also
- 6 Footnotes
- 7 References

# Temporomandibular joints

Unlike a typical finger or vertebral junctions, each TMJ actually has two joints, which allows it to rotate and to translate (slide). With use, it is common to see wear of both the bone and cartilage components of the joint. Clicking is common, as are popping and deviations in the movements of the joint. Pain is the most conventional signifier of TMD.

The surfaces in contact with one another (cartilage) do not have any receptors to transmit the feeling of pain. The pain therefore originates from one of the surrounding soft tissues, or from the trigeminal nerve itself, which runs through the joint area. When receptors from one of these areas are triggered, the pain can cause a reflex to limit the mandible's movement. Furthermore, inflammation of the joints or damage to the trigeminal nerve can cause constant pain, even without movement of the jaw.

Due to the proximity of the ear to the temporomandibular joint, TMJ pain can often be confused with ear pain.[7] The pain may be referred in around half of all patients and experienced as otalgia (earache).[8][9] Conversely, TMD is an important possible cause of secondary otalgia.[10] Treatment of TMD may then significantly reduce symptoms of otalgia and tinnitus,[11] as well as atypical facial pain.[12] Despite some of these findings, some researchers question whether TMD therapy can reduce symptoms in the ear, and there is currently an ongoing debate to settle the controversy.[13]

The dysfunction involved is most often in regards to the relationship between the condyle of the mandible and the disc. [14] The sounds produced by this dysfunction are usually described as a "click" or a "pop" when a single sound is heard and as "crepitation" or "crepitus" when there are multiple, rough sounds.[citation needed]

## Teeth

Disorders of the teeth can contribute to TMJ dysfunction.[15] Impaired tooth mobility and tooth loss can be caused by destruction of the supporting bone and by heavy forces being placed on teeth. The movement of the teeth affects how they contact one another when the mouth closes, and the overall relationship between the teeth, muscles, and joints can be altered. Pulpitis, inflammation of the dental pulp, is another symptom that may result from excessive surface erosion. Perhaps the most important factor is the way the teeth meet together: the equilibration of forces of mastication and therefore the displacements of the condyle. Many report TMJ dysfunction after having their wisdom teeth extracted.[citation needed]

# Cause

There are many external factors that place undue strain on the TMJ. These include but are not limited to the following:

Bruxism has been shown to be a contributory factor in the majority of TMD cases.[16] Over-opening the jaw beyond its range for the individual or unusually aggressive or repetitive sliding of the jaw sideways (laterally) or forward (protrusive). These movements may also be due to parafunctional habits or a malalignment of the jaw or dentition. This may be due to:

1. Bruxism (repetitive unconscious clenching or grinding of teeth, often at night).
2. Loss of bite height (bite collapse), leading to an unnatural position of the lower jaw while chewing. Often occurs in patients over the age of 40 due to the natural aging process and/or bruxism. Overzealous equilibration by inexperienced staff or the improper use of air abrasion can also lead to the loss tooth height.
3. Trauma (e.g. sports related injuries; whiplash from any automobile accident; accidental injuries from any source to one's chin to cause ones chin to move in an upward/backward direction)
4. Mal-alignment of the occlusal surfaces of the teeth due to genetics, defective crowns, restorative procedures, lack of cooperation during orthodontic treatment.
5. The controversial practice of extracting 4 bicuspids in orthodontic treatment of patients with small jaws and overcrowding, which has been shown to lead to joint dysfunction. It is now discouraged in favor of a palate expander based treatment plan.[citation needed]
6. Jaw thrusting (causing unusual speech and chewing habits).
7. Parafunctional habits other than bruxism: excessive gum chewing, nail biting, eating very hard foods.[citation needed]
8. Exaggerated opening of mouth, when eating large sized foods, excessive opening during yawning/sneezing and in difficult cases of third molar (wisdom tooth) extraction.
9. Degenerative joint disease, such as osteoarthritis or organic degeneration of the articular surfaces, recurrent fibrous and/or bony ankylosis, developmental abnormality, or pathologic lesions within the TMJ
10. Myofascial pain syndrome
11. Lack of overbite or cuspid protected occlusion will result in excessive forces directed to posterior teeth and hence, more stress to muscles of mastication
12. Clenching from stress or anger and this will result in a common complaint of "sore jaws" noticed when one first awakens in morning.

Patients with TMD often experience pain such as migraines or headaches, and consider this pain TMJ-related. There is some evidence that some people who use a biofeedback headband to reduce nighttime clenching experience a reduction in TMD.[17] The dentist must ensure a correct diagnosis does not mistake trigeminal neuralgia as a temporomandibular disorder.[18] Oromandibular dystonia is another rare diagnosis which might cause some confusion [19]

# Treatment

## Restoration of the occlusal surfaces of the teeth

If the occlusal surfaces of the teeth or the supporting structures have been altered due to inappropriate dental treatment, periodontal disease, or trauma, the proper occlusion may need to be restored.[citation needed] Patients with bridges, crowns, or onlays should be checked for bite discrepancies. These discrepancies, if present, may cause a person to make contact with posterior teeth during sideways chewing motions. These inappropriate contacts are called interferences, and if present, they can cause a patient to subconsciously avoid those motions, as they will provoke a painful response. The result can be excessive strain or even spasms of the chewing muscles. Treatment could include adjusting the restorations or replacing them. (Christensen 1997, *A Consumer's Guide to Dentistry*).

## Splint

Occlusal splints (also called night guards or mouth guards) reduce nighttime clenching in some patients, while increasing clenching activity in other patients.[citation needed] Thus, while occlusal splints do prevent loss of tooth enamel from grinding, use of a "one size fits all" splint can worsen TMJ disorder symptoms for some people.

All appliances are not equal in effectiveness. When patients have a problem 24 hours/ day 7 days a week the use of a nightime appliance may not be the best approach. An orthotic is worn all day and night and allows for permanent healing of the joints and muscles. A neuromuscular orthotic that is made to a phsiologic rest position is one of the most effective treatments but usually requires a long term correction. Neuromuscular Dentistry addresses the healthy muscle physiology and body posture as well as just the TM Joints.[20]

Frequently patients with TMJ disorders also have sleep apnea or UARS, upper respiratory airway resistance syndrome and receive the most benefit from a night-time airway appliance and a daytime orthotic. Patients with long-term chronic pain respond extremely well to this type of therapy.

## Nighttime biofeedback

Nighttime EMG biofeedback (for instance by using a biofeedback headband or biofeedback device) can be used to reduce bruxism and thus reduce or eliminate the ongoing nightly cycle of damage that contributes to the majority of TMJ disorder symptoms. This treatment is non-invasive.

## Pain relief

While conventional analgesic pain killers such as paracetamol (acetaminophen) or NSAIDs provide initial relief for some sufferers, the pain is often more neurologic in nature, which often does not respond well to these drugs.[21]

An alternative approach is for pain modification, for which off-label use of low-doses of anti-muscarinic tricyclic antidepressant such as amitriptyline or the less sedative nortriptyline generally prove more effective.[22][23] In TMJD the muscles are unbalanced. Biofeedback using EMG is successful in balancing these muscles. A mirror can be used as a biofeedback device. The patient, watching in the mirror, relaxes the jaw vertically while exhaling. With daily practice the jaw opens midline and the symptoms usually abate.[24]

## Long-term approach

It is suggested that before the attending dentist commences any plan or approach using medications or surgery, a thorough search for inciting para-functional jaw habits must be performed. Correction of any discrepancies from normal can then be the primary goal.

Patients may employ a nighttime biofeedback instrument such as a biofeedback headband or biofeedback device to help them modify para-functional jaw habits which take place in sleep. In addition, there are various treatment modalities which a well-trained experienced dentist may employ to relieve symptoms and improve joint function.[citation needed] They include:

- Manual adjustment of the bite by grinding the teeth (occlusal adjustment). This, too, is not a widely accepted practice and should be avoided as it is irreversible.
- Nighttime biofeedback for para-functional habit modification
- Mandibular repositioning splints which move the jaw, ligaments and muscles into a new position and myofunctional therapy
- Reconstructive dentistry
- Orthodontics
- Arthrocentesis (joint irrigation)
- Surgical repositioning of jaws to correct congenital jaw malformations such as prognathism and retrognathia
- Replacement of the jaw joint(s) or disc(s) with TMJ implants (this should be considered only as a treatment of last resort)

**Elimination of para-functional habits**

An approach to eliminating para-functional habits involves the taking of a detailed history and careful physical examination. The medical history should be designed to reveal duration of illness and symptoms, previous treatment and effects, contributing medical findings, history of facial trauma, and a search for habits that may have produced or enhanced symptoms. Particular attention should be directed in identifying perverse jaw habits, such as clenching or teeth grinding, lip or cheek biting, or positioning of the lower jaw in an edge-to-edge bite. All of the above strain the muscles of mastication (chewing) and result in jaw pain. Palpation of these muscles will cause a painful response.

Treatment is oriented to eliminating oral habits, physical therapy to the masticatory muscles, and alleviating bad posture of the head and neck. A biofeedback headband or biofeedback device may be worn at night to help patients train themselves out of the para-functional habit of nighttime clenching and grinding (bruxism). A flat-plane full-coverage oral appliance, e.g. a non-repositioning stabilization splint, reduces bruxism in some patients, and can take stress off the temporomandibular joint, although some individuals may bite harder on it, resulting in a worsening of their conditions. The anterior splint, with contact at the front teeth only, may prove helpful to some patients, but for those patients who bite harder on this type of splint, even more damage may occur. Thus, different types of splint therapy may work for different patients.

**Reversible treatments**

In line with the recommendations of the National Institute of Dental and Craniofacial Research (NIDCR) of the National Institutes of Health (NIH), treatments for TMJD should not permanently alter the jaw or teeth, but need to be reversible.[25][26] To avoid permanent change, over-the-counter or prescription pain medications may be prescribed.[27]

Other interventions include:

- Stabilization splint (biteplate, nightguard) is a common but unproven treatment for TMJD. A splint should be properly fitted to avoid exacerbating the problem and used for brief periods of time. The use of the splint should be discontinued if it is painful or increases existing pain.[27]
- Cognitive Behavioral Therapy (CBT). Psychosocial risk factors have also been linked to TMJ syndrome. Studies have shown that changes in psychosocial issues can help reduce pain and increase jaw movement.[28][29]

**Surgery**

Attempts in the last decade to develop surgical treatments based on MRI and CAT scans now receive less attention. These techniques are reserved for the most difficult cases where other therapeutic modalities have failed.

One option for oral surgery is to manipulate the jaw under general anaesthetic and wash out the joint with a saline and anti-inflammatory solution in a procedure known as arthrocentesis.[30] In some cases, this will reduce the inflammatory process.

# Jaw dislocation

*Main article: Dislocation of jaw*

The jaw can dislocate if a person opens their mouth too wide, particularly when a person attempts to open the jaw widely in an effort to stretch the facial muscles i.e. to relieve tense facial muscles as the wisdom teeth develop and emerge.

The jaw can also "slide out" as the person is sleeping on their side.

# See also

- Bruxism
- Condylar resorption

# Footnotes

1. ^ Zadik, Yehuda; Aktaş Alper; Drucker Scott; Nitzan W Dorrit (2012). "Aneurysmal bone cyst of mandibular condyle: A case report and review of the literature" (http://www.sciencedirect.com/science/article/pii/S1010518211002551). *J Craniomaxillofac Surg* **40**. doi:10.1016/j.jcms.2011.10.026 (http://dx.doi.org/10.1016%2Fj.jcms.2011.10.026). PMID 22118925 (//www.ncbi.nlm.nih.gov/pubmed/22118925). http://www.sciencedirect.com/science/article/pii/S1010518211002551.
2. ^ "Temporomandibular Disorders: eMedicine Neurology" (http://emedicine.medscape.com/article/1143410-overview). http://emedicine.medscape.com/article/1143410-overview.
3. ^ *synd/4119 (http://www.whonamedit.com/synd.cfm/4119.html)* at Who Named It?
4. ^ Costen JB (October 1997). "A syndrome of ear and sinus symptoms dependent upon disturbed function of the temporomandibular joint. 1934". *Ann Otol Rhinol Laryngol* **106** (10 Pt 1): 805–19. PMID 9342976 (//www.ncbi.nlm.nih.gov/pubmed/9342976).
5. ^ Michael LA (1997 Oct). "Jaws revisited: Costen's syndrome". *Ann Otol Rhinol Laryngol* **106** (10 Pt 1): 820–2. PMID 9342977 (//www.ncbi.nlm.nih.gov/pubmed/9342977).
6. ^ Okeson (2003), page 191.
7. ^ Okeson (2003), page 233.
8. ^ Tuz HH, Onder EM, Kisnisci RS (2003). "Prevalence of otologic complaints in patients with temporomandibular disorder". *Am J Orthod Dentofacial Orthop* **123** (6): 620–3. doi:10.1016/S0889-5406(03)00153-7 (http://dx.doi.org/10.1016%2FS0889-5406%2803%2900153-7). PMID 12806339 (//www.ncbi.nlm.nih.gov/pubmed/12806339).
9. ^ Ramírez LM, Sandoval GP, Ballesteros LE (2005). "Temporomandibular disorders: referred cranio-cervico-facial clinic" (http://www.medicinaoral.com/medoralfree01/v10Suppl1i/medoralv10suppl1ip18.pdf). *Med Oral Patol Oral Cir Bucal* **10 Suppl 1**: E18–26. PMID 15800464 (//www.ncbi.nlm.nih.gov/pubmed/15800464). http://www.medicinaoral.com/medoralfree01/v10Suppl1i/medoralv10suppl1ip18.pdf.
10. ^ Peroz I (2001). "[Otalgia and tinnitus in patients with craniomandibular dysfunctions]" (in German). *HNO* **49** (9): 713–8. PMID 11593771 (//www.ncbi.nlm.nih.gov/pubmed/11593771).
11. ^ Sobhy OA, Koutb AR, Abdel-Baki FA, Ali TM, El Raffa IZ, Khater AH (2004). "Evaluation of aural manifestations in temporo-mandibular joint dysfunction". *Clin Otolaryngol Allied Sci* **29** (4): 382–5. doi:10.1111/j.1365-2273.2004.00842.x (http://dx.doi.org/10.1111%2Fj.1365-2273.2004.00842.x). PMID 15270827 (//www.ncbi.nlm.nih.gov/pubmed/15270827).
12. ^ Quail G (2005). "Atypical facial pain--a diagnostic challenge" (http://www.racgp.org.au/afp/downloads/pdf/august2005/August_theme_quail2.pdf) (PDF). *Aust Fam Physician* **34** (8): 641–5. PMID 16113700 (//www.ncbi.nlm.nih.gov/pubmed/16113700). http://www.racgp.org.au/afp/downloads/pdf/august2005/August_theme_quail2.pdf.
13. ^ Okeson (2003), page 234.
14. ^ Okeson (2003), page 204.
15. ^ Okeson (2003), page 227.

16. ^ van der Meulen MJ, Ohrbach R, Aartman IH, Naeije M, Lobbezoo F (2010). "Temporomandibular disorder patients' illness beliefs and self-efficacy related to bruxism". *J Orofac Pain* **24** (4): 367–372. PMID 21197508 (//www.ncbi.nlm.nih.gov/pubmed/21197508) .

17. ^ Crider A, Glaros AG, Gevirtz RN (2005 Dec). "Efficacy of biofeedback-based treatments for temporomandibular disorders". *Appl Psychophysiol Biofeedback* **30** (4): 333–45. doi:10.1007/s10484-005-8420-5 (http://dx.doi.org/10.1007%2Fs10484-005-8420-5) . PMID 16385422 (//www.ncbi.nlm.nih.gov/pubmed/16385422) .

18. ^ Drangsholt, M; Truelove, EL (July 2001). "Trigeminal neuralgia mistaken as temporomandibular disorder" (http://www.jebdp.com/article/S1532-3382%2801%2970082-6/abstract) . *J Evid Base Dent Pract* (Mosby, Inc) **1** (1): 41–50. doi:10.1067/med.2001.116846 (http://dx.doi.org/10.1067%2Fmed.2001.116846) . http://www.jebdp.com/article/S1532-3382%2801%2970082-6/abstract. Retrieved 25 November 2010.

19. ^ Viswanath A, Gordon SM (2012). "Two cases of oromandibular dystonia referred as temporomandibular joint disorder" (http://www.grandrounds-e-med.com/articles/gr120001.htm) . *Grand Rounds* **12**: 1–5. doi:10.1102/1470-5206.2012.0001 (http://dx.doi.org/10.1102%2F1470-5206.2012.0001) . http://www.grandrounds-e-med.com/articles/gr120001.htm.

20. ^ http://en.wikipedia.org/wiki/Neuromuscular_dentistry

21. ^ Vickers ER, Cousins MJ (2000). "Neuropathic orofacial pain. Part 2-Diagnostic procedures, treatment guidelines and case reports". *Aust Endod J* **26** (2): 53–63. doi:10.1111/j.1747-4477.2000.tb00270.x (http://dx.doi.org/10.1111%2Fj.1747-4477.2000.tb00270.x) . PMID 11359283 (//www.ncbi.nlm.nih.gov/pubmed/11359283) .

22. ^ Marbach JJ (1996). "Temporomandibular pain and dysfunction syndrome. History, physical examination, and treatment". *Rheum. Dis. Clin. North Am.* **22** (3): 477–98. doi:10.1016/S0889-857X(05)70283-0 (http://dx.doi.org/10.1016%2FS0889-857X%2805%2970283-0) . PMID 8844909 (//www.ncbi.nlm.nih.gov/pubmed/8844909) .

23. ^ Dionne RA (1997). "Pharmacologic treatments for temporomandibular disorders". *Oral Surg. Oral Med. Oral Pathol. Oral Radiol. Endod.* **83** (1): 134–42. doi:10.1016/S1079-2104(97)90104-9 (http://dx.doi.org/10.1016%2FS1079-2104%2897%2990104-9) . PMID 9007937 (//www.ncbi.nlm.nih.gov/pubmed/9007937) .

24. ^ Grossan M (1989). "Treatment of Temporomandibular Joint Disease with Biofeedback". In Leland House.

25. ^ Lipton JA, Ship JA, Larach-Robinson D (1993). "Estimated prevalence and distribution of reported orofacial pain in the United States". *J Am Dent Assoc* **124** (10): 115–21. PMID 8409001 (//www.ncbi.nlm.nih.gov/pubmed/8409001) .

26. ^ National Institutes of Health Technology Assessment Conference Statement. (1996). *Management of temporomandibular disorders.* Washington, D.C.: Government Printing Office.

27. ^ *ᵃ ᵇ* The TMJ Association (2005). "Temporomandibular (Jaw) Joint Diseases and Disorders" (http://www.tmj.org/site/pdf/TMJbrochure.pdf) . http://www.tmj.org/site/pdf/TMJbrochure.pdf. Retrieved 2 December 2010.

28. ^ Linda LeResche, University of Washington, R01 DE016212

29. ^ Turner JA, Holtzman S, Mancl C. Mediators, moderators, and predictors of therapeutic change in cognitive–behavioral therapy for chronic pain. Pain 2007;127(3):276-86.

30. ^ "Temporomandibular Disorders" (http://www.clevelandclinic.org/health/health-info/docs/3100/3152.asp) . The Cleveland Clinic. http://www.clevelandclinic.org/health/health-info/docs/3100/3152.asp.

# References

- Okeson, Jeffrey P. (2003). *Management of temporomandibular disorders and occlusion* (5th ed.). St. Louis: Mosby. ISBN 0-323-01477-1.
- Edward F. Wright (2009). *Manual of Temporomandibular Disorders* (2 ed.). John Wiley and Sons. ISBN 978-0-8138-1324-0.
- Gremillion, Henry A. (2003). "Temporomandibular Disorders". In Edwab, Robert R.. *Essential dental handbook: clinical and practice management advice from the experts* (illustrated ed.). PennWell Books. pp. 251–309. ISBN 978-0-87814-624-6.

Retrieved from "http://en.wikipedia.org/w/index.php?title=Temporomandibular_joint_disorder&oldid=521070726"

Categories: Pain | Jaw disorders | Musculoskeletal disorders | Medical terms

---

- This page was last modified on 2 November 2012 at 16:19.
- Text is available under the Creative Commons Attribution-ShareAlike License; additional terms may apply. See Terms of Use for details.
  Wikipedia® is a registered trademark of the Wikimedia Foundation, Inc., a non-profit organization.

EXHIBIT-D

ILLINOIS DEPARTMENT OF CORRECTIONS
**OFFENDER'S GRIEVANCE**

C455

| | | |
|---|---|---|
| **Date:** December 24, 2011 | **Offender:** (Please Print) Dorakah Gray | **ID#** K70373 |
| **Present Facility:** Stateville Corr. Ctr. | **Facility where grievance issue occurred:** Stateville Corr. Ctr. | |

**NATURE OF GRIEVANCE:**

- [ ] Personal Property
- [ ] Staff Conduct
- [ ] Transfer Denial by Facility
- [ ] Mail Handling
- [ ] Dietary
- [ ] Transfer Denial by Transfer Coordinator
- [ ] Restoration of Good Time
- [x] Medical Treatment
- [ ] Disability
- [ ] HIPAA
- [x] Other (specify): Dental (TMJ)

- [ ] Disciplinary Report: ____ / ____ / ____
  Date of Report          Facility where issued

**Note:** Protective Custody Denials may be grieved immediately via the local administration on the protective custody status notification.

**Complete:** Attach a copy of any pertinent document (such as a Disciplinary Report, Shakedown Record, etc.) and send to:

**Counselor,** unless the issue involves discipline, is deemed an emergency, or is subject to direct review by the Administrative Review Board.
**Grievance Officer,** only if the issue involves discipline at the present facility or issue not resolved by Counselor.
**Chief Administrative Officer,** only if EMERGENCY grievance.
**Administrative Review Board,** only if the issue involves transfer denial by the Transfer Coordinator, protective custody, involuntary administration of psychotropic drugs, issues from another facility except personal property issues, or issues not resolved by the Chief Administrative Officer.

**Brief Summary of Grievance:** The Grievant suffers from a chronic degenerative Temple Mandibular Joint Disorder (TMJ). Grievant was notified by Dr. Mitchell that Stateville and Wexford do not offer a treatment plan or therapy for TMJ as that the only dental treatment offered is a oral appliance, Night-guard, which the Grievant has notified the dental staff does not help with the pain. Mitchell told the Grievant that he has to talk the medical director for any further treatment, that is, only Dr. Carter can schedule the Grievant to see a TMJ expert. The Grievant has written Dr. Carter several letters request to be seen and sent to a TMJ expert. The Grievant TMJ is causing his mouth to shut down resulting in more pain which the Grievant lives with daily for 24 hours a day; the Grievant has not even been pain medication.

**Relief Requested:** Grievant request to be seen by Dr. Carter and sent to a TMJ expert; placed on a treatment plan and given therapy; and pain medication.

- [ ] Check only if this is an EMERGENCY grievance due to a substantial risk of imminent personal injury or other serious or irreparable harm to self.

| | | |
|---|---|---|
| *Offender's Signature* | K70373 | 12 / 24 / 2011 |
| | ID# | Date |

(Continue on reverse side if necessary)

---

**Counselor's Response** (if applicable)

**Date Received:** 12 / 23 / 11    [ ] Send directly to Grievance Officer    [ ] Outside jurisdiction of this facility. Send to Administrative Review Board, P.O. Box 19277, Springfield, IL 62794-9277

**Response:** A copy of this grievance has been forwarded to the HCU for review and response and the original grievance has been forwarded to the grievance office. There is no need to send your copy to the grievance office or the health care unit. You will receive a final response from the grievance office when health care responds to same. L Dennis

| | | |
|---|---|---|
| L Dennis | | 12 / 29 / 11 |
| Print Counselor's Name | Counselor's Signature | Date of Response |

---

**EMERGENCY REVIEW**

**Date Received:** ____ / ____ / ____

Is this determined to be of an emergency nature?
- [ ] Yes; expedite emergency grievance
- [ ] No; an emergency is not substantiated. Offender should submit this grievance in the normal manner.

_____    ____ / ____ / ____
Chief Administrative Officer's Signature             Date

EXHIBIT- E

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| Doiakah Gray, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 12-CV-00244 |
| | ) | Judge Gary Feinerman |
| Imhotep Carter | ) | Magistrate Judge Sidney I. Schenkier |
| Marcus Hardy | ) | |
| Joe Sheeny | ) | |
| Steven Fischman | ) | |
| | ) | |
| Defendants. | ) | |

## DR. IMHOTEP CARTER'S ANSWERS TO
## PLAINTIFF'S FIRST SUBMISSION OF INTERROGATORIES

1.     Please state the full name and title of the person answering these

interrogatories?

**ANSWER**:     Imhotep Carter, M.D.

2.     Were you employed by Wexford Health Sources, Inc. as a medical doctor at

Stateville Correctional Center, if the answer is yes, please state the start date of your

employment at Stateville and the last date of your employment at Stateville?

**ANSWER**:     Yes.     Start date:  7/25/11 - End Date:  5/9/12

3.     Please state if you were the medical director and/or acting medical director at

Stateville during your time of employment at Stateville?

**ANSWER**:     I was Medical Director during my entire time of employment at Stateville

Correctional Center.

4.    Were you responsible for providing medical treatment to inmates at Stateville during your employment at the institution?

**ANSWER**:    I was responsible for providing medical treatment only to those inmates who were scheduled to see me. I did not have responsibility for personally rendering medical treatment to all inmates at Stateville Correctional Center.

5.    Please state your duties as the medical director at Stateville as it relates to sending an inmate to receive specialized medical treatment from a specialist outside of Stateville.

**ANSWER**:    Essentially, any medical personnel can authorize an immediate offsite referral for treatment in emergency situations. In non-emergency situations, a request for offsite referral will be submitted by the treating physician, or other authorized medical person, to the medical director for initial approval. If approved by the medical director, he will then submit the request for collegial review, usually via telephone, for approval by the designated medical person for that location, for final review and authorization.

6.    Please state the process, and attach any and all rules, regulations, by-laws, and/or laws, used by you as the medical director at Stateville to send an inmate to receive medical treatment outside of Stateville?

**ANSWER**:    See this defendants' response to Interrogatory No. 5, above. This defendant does not possess any rules, regulations, by-laws, etc.

7.    Please state the following:

(a) If Wexford offers a treatment plan at Stateville for degenerative temple mandibular joint disorder ("TMJ")?

(b) If Wexford offers physical therapy at Stateville for TMJ?

(c) If Wexford offers pain management at Stateville for TMJ?

**ANSWER**:     (a)-(c) This defendant is of the belief that at the time he was medical director at Stateville, Wexford offered appropriate treatment, physical therapy and pain management plans for inmates suffering from TMJ conditions, based upon their case by case circumstances, either within Stateville or through outside sources.

8.     Please state if the medical department offers the community standard of medical treatment for TMJ at Stateville, if the answer is yes, please state what that medical treatment consist of?

**ANSWER**:     This defendant objects to this interrogatory, in that it is not only incomprehensibly vague, but also irrelevant and immaterial to the issues raised in this case.

9.     Please state if you are aware that TMJ causes pain twenty-four hours a day?

**ANSWER**:     No.

10.     Please state if you are aware that TMJ is typically treated by a TMJ expert?

**ANSWER**:     This defendant is aware that TMJ can occasionally be treated by a TMJ specialist under certain circumstances.

11.     Please state if you are aware that TMJ can be treated with therapy and pain management.

**ANSWER**:     This defendant is aware that physical therapy and pain management are modes of treatment for TMJ under certain circumstances.

CHARYSH & SCHROEDER, LTD.

*Wm. Michael LeCrone*

CHARYSH & SCHROEDER, LTD.
33 North Dearborn Street
Suite 1300
Chicago, Illinois 60602
(312) 372-8338
Wm. Michael LeCrone, ARDC #6182862

## VERIFICATION

I, IMHOTEP CARTER, M.D., declare under penalty of perjury, pursuant to 28 U.S.C. §1746, that, to the best of my knowledge and belief, the foregoing is true and correct, executed on October _11_, 2012.

_____
Imhotep Carter, M.D.

## CERTIFICATE OF SERVICE

The undersigned, an attorney, certifies that he served a copy of the foregoing document on the plaintiff, and all counsel of record, at their respective addresses by depositing copies of same with proper postage prepaid in the U.S. Mail at 33 North Dearborn Street, Chicago, Illinois at or before 5:00 p.m. on October 11, 2012.

*Wm. Michael Kelley*

EXHIBIT-F

| | | Number | 04.03.103 |
|---|---|---|---|
| **Illinois** | *ADMINISTRATIVE* | Page | 1 of 6 |
| Department of | *DIRECTIVE* | | |
| **Corrections** | | Effective | 4/1/2007 Amended 1/1/2012 |

| Section | 04 | Programs and Services |
|---|---|---|
| Subsection | 03 | Medical and Health Care |
| Subject | 103 | Offender Health Care Services |

## I. POLICY

### A. Authority

730 ILCS 5/3-2-2, 5/3-6-2, and 5/3-7-2

20 Ill. Adm. Code 415 and 504

### B. Policy Statement

The Department shall ensure offenders have access to adequate health care.

## II. PROCEDURE

### A. Purpose

The purpose of this directive is to establish a uniform procedure for the provision of health care services to offenders in correctional facilities.

### B. Applicability

This directive is applicable to all adult Level One through Level Seven and juvenile Level One through Level Four correctional facilities within the Department.

### C. Internal Audits

An internal audit of this directive shall be conducted at least annually.

### D. Designees

Individuals specified in this directive may delegate stated responsibilities to another person or persons unless otherwise directed.

### E. Definition

Chronic illness - those diseases as listed in accordance with Administrative Directive 04.03.105, and medical conditions that require long term follow up as determined by the medical director.

HIV (Human Immunodeficiency Virus) - see Administrative Directive 04.03.115.

Specialty Service - includes non-routine services and items including, but not limited to, off-site consultations, off-site x-rays, non-formulary medications, and medical equipment.

**Illinois** Department of **Corrections**

| ADMINISTRATIVE DIRECTIVE | Effective | 4/1/2007 Amended 1/1/2012 | Page | 2 of 6 | Number | 04.03.103 |
|---|---|---|---|---|---|---|

F.   **Requirements**

The Chief Administrative Officer shall develop a written procedure covering the provision of health care services within the facility. The procedure shall be dated and signed by the Chief Administrative Officer and the designated health care authority for the facility and approved by the Agency Medical Director. The procedure shall provide for the following.

1.    **Direction**

The health care services program shall be directed by a designated health authority whose scope of duties are detailed in a written agreement, contract, or job description that is reviewed annually and revised when necessary.

2.    **Scope of Services**

a.    The method by which all offenders of a facility, regardless of custody status or other factors, can obtain health services at the level of self care, first-aid, emergency care, clinic care, infirmary care, and hospitalization shall be identified and described. (This may include the services provided by an outside or community hospital.)

b.    The method for providing a health education program, health maintenance program, chronic and convalescent care, continuing care, and emergency care shall be identified and described.

3.    **Offender Access**

a.    All offenders shall have daily access to health care personnel and be referred to a facility physician, physician's assistant, or nurse practitioner as needed.

b.    Offenders shall be referred for specialty services if determined medically necessary.

(1)   If a facility physician, physician's assistant, or nurse practitioner deems specialty services necessary, a Medical Specialty Service Referral and Report, DOC 0254, shall be submitted to the facility Medical Director.

(2)   The facility Medical Director shall review the referral and make a determination and:

(a)   If denied, shall be forwarded to the facility Health Care Unit Administrator for a Utilization Review in accordance with Administrative Directive 04.03.125.

(b)   If approved, submit the referral to the Utilization Management Unit of the facility's health care vendor. The referral may be made in writing or verbally through a collegial review. Verbal reviews shall be documented on the progress notes in the offender's medical record.

*Illinois* Department of **Corrections**

| ADMINISTRATIVE DIRECTIVE | Effective | 4/1/2007 Amended 1/1/2012 | Page | 3 of 6 | Number | 04.03.103 |
|---|---|---|---|---|---|---|

(c) The vendor's Utilization Management Unit will review the referral and must submit a written response to the facility Medical Director within five working days.

    i. If the response is not received within the five working days, the facility Medical Director shall advise the Health Care Unit Administrator who shall contact the Agency Medical Director.

    ii. The response shall be placed in the consultation section of the offender's medical file.

    iii. If the referral is approved, the facility Medical Director shall ensure services are scheduled and the course of treatment is initiated.

    iv. If the referral is denied, the facility Medical Director shall forward the referral to the facility Health Care Unit Administrator for a Utilization Review in accordance with Administrative Directive 04.03.125.

(3) If approved, health care staff shall schedule the pending specialty service.

(4) If denied, the facility Medical Director shall notify the offender in writing on the Medical Special Services Referral Denial or Revision, DOC 0255.

**NOTE:** Any member of the staff responsible for offender's care may request a Utilization Appeal directly to the Agency Medical Director in all cases of denials from the vendors Utilization Management Unit.

c. Offender shall be offered testing for HIV and related counseling by medical personnel upon arrival at the parent institution following transfer from reception and classification and again prior to transfer to a transition center or prior to release, discharge, or parole. Consent for testing or refusal shall be documented on the DOC 0215.

d. Health care personnel shall conduct rounds in segregation or confinement units daily to ensure adequate offender access.

e. A physician, physician's assistant, or nurse practitioner shall make rounds in the segregation or confinement units at least once per week.

4. **Offender Notification**

a. Offenders shall be informed of the following:

(1) All offenders may participate in sick call; and

**Illinois** Department of **Corrections**

| | Effective | 4/1/2007<br>Amended 1/1/2012 | Page | 4 of 6 | Number | 04.03.103 |
|---|---|---|---|---|---|---|
| **ADMINISTRATIVE<br>DIRECTIVE** | | | | | | |

(2) The procedures for gaining access to health services and for filing a complaint regarding health services.

b. In the event the offender does not understand English, he or she shall be informed of the foregoing in a language that he or she understands.

5. **Medical Treatment**

    a. When an offender is incapable of giving consent, medical treatment, including medication, may be given against an offender's will where approved by the Chief Administrative Officer or the Duty Administrative Officer (no designees) when in the opinion of an Illinois licensed physician immediate treatment is required:

        (1) To protect the offender from a physical condition threatening to cause death, damage or impairment of bodily functions, or disfigurement, and the offender is incapable of giving consent.

        (2) Where death of the offender or serious permanent bodily injury is likely to result in the near future if treatment is not provided.

    b. The physician's opinion and recommendation and the Chief Administrative Officer's or the Duty Administrative Officer's approval shall promptly be documented on an Offender Medical Emergency Consent Waiver, DOC 0095, and placed in the offender's medical record.

    c. The involuntary administration of psychotropic medication shall comply with Department Rule 415.70. The physician's opinion and order shall be documented on an Emergency Involuntary Administration of Psychotropic Medication, DOC 0097, and placed in the offender's medical record.

6. **Review of Sick Call Requests**

    a. Health care staff shall review offender sick call requests within 24 hours of receipt. Medical emergencies shall be addressed as they occur.

    b. Upon determination that a nursing evaluation is appropriate, health care staff shall schedule an evaluation. The evaluation shall take place within three days.

7. **Co-Payment for Non-emergency Medical Services in Adult Facilities**

    a. Offenders in adult facilities who request non-emergency treatment shall pay the Department a $5.00 co-pay per visit. Services are non-emergency services when requested by the offender and determined to be non-emergent by the examining medical personnel such as a Certified Medical Technician, Dentist, Mental Health Professional, Nurse, Nurse Assistant, Physician, or Physician's Assistant. An offender who has been diagnosed with a chronic illness shall be exempt from the $5.00 co-pay for treatment of the chronic illness at the regularly scheduled chronic illness clinic visit.

**Illinois** Department of **Corrections**

| ADMINISTRATIVE DIRECTIVE | Effective | 4/1/2007 Amended 1/1/2012 | Page | 5 of 6 | Number | 04.03.103 |
|---|---|---|---|---|---|---|

b.   At the time of the non-emergency evaluation, the offender shall be required to sign an Offender Authorization for Payment, DOC 0296, authorizing the deduction of the co-pay from present or future funds in his or her trust fund account. Justification for the co-pay shall be documented in the progress notes. Indigent offenders, as defined in 730 ILCS 5/3-6-2, subpart (f), shall be exempt from the co-pay.

c.   When the evaluation is provided, the Health Care Unit shall submit the DOC 0296 to the business office for processing in accordance with Administrative Directive 02.42.105.

8.   **Health Care Planning for General Population Offenders**

a.   Health care staff shall identify offenders who have health conditions that require health care planning.

b.   Prior to release from the facility, health care staff shall complete health care planning for each offender as indicated and offer counseling and testing for HIV free of charge.

c.   To ensure no interruption in the treatment of offenders being released, discharged, or transferred to a transition center, health care staff shall either:

(1)   Provide a two week supply of the medication and a prescription for an additional two week supply; or

(2)   Make an appointment on behalf of the offender with the appropriate specialty in the community and provide the offender with the quantity of medication that will supply the offender until said appointment.

d.   If medication is released in a non-child resistant package, health care staff shall ensure:

(1)   A sticker stating "Package NOT child resistant" is affixed to the package.

(2)   The Child Resistant Packaging Waiver, DOC 0145, is completed and the offender signs or the offender's refusal to sign is documented.

(3)   The medication is released to the offender. Refusal to sign the DOC 0145 shall not prevent release of medication.

e.   Following completion of the health care planning, a note shall be placed:

(1)   On the Offender Medical Problem List, DOC 0088, indicating that health care planning has been completed.

(2)   In the progress notes describing the health care plan and indicating that the plan was discussed with the offender.

*Illinois* Department of **Corrections**

| | | | | | |
|---|---|---|---|---|---|
| **ADMINISTRATIVE DIRECTIVE** | Effective | **4/1/2007 Amended 1/1/2012** | Page | **6 of 6** | Number **04.03.103** |

f.   The Health Care Planning portion of local procedures shall be reviewed, and revised and re-approved annually at the time of the Quality Improvement Committee Meeting as described in Administrative Directive 04.03.125.

9.   **Review of Health Complaints**

a.   Reports of health problems or other medical complaints made by offenders shall be reviewed within 24 hours, or immediately in the event of an emergency, by designated trained staff.  Appropriate referrals to scheduled or unscheduled health services shall be made as needed.

b.   When an offender request for non-emergency medical attention results in referral to a primary care physician by the screening medical personnel, the primary care evaluation shall take place within 72 hours or upon the next scheduled visit by a primary care physician.

**Authorized by:**

**Roger E. Walker, Jr.
Director**

Supersedes:
04.03.103                              AD                              1/1/2006

EXHIBIT-G

**STATE OF ILLINOIS - DEPARTMENT OF CORRECTIONS**

Facility Stateville
Correctional Center

**REQUEST FOR CONSULTATION — REPORT OF CONSULTATION**

Inmate's Name _Gray_                              Inmate's Number _K 70373_

Consult Requested By: _Dr. Rowe_     Date: _9/6/2001_    URGENT ( ) YES    ( ) No

Reason for Consult: (List Problem)    _TMJ Evaluation_

Evaluation
Management

                                                                Report of Consultant (Use Reverse Side if Necessary)
FINDINGS:  _Complain of pain in the left TMJ area_

ASSESSMENT:  _Bruxism_

RECOMMENDATIONS/PLANS:  _night guard_

Date: _9-28-01_                     _J. A. Craig_ M.D.
                                                        (Signature of Consultant)

**FOR CORRECTIONAL CENTER MEDICAL DIRECTOR ONLY:**

☐  I have reviewed the recommendations contained in this report and approve them.

☐  I have reviewed the recommendations and disapprove or choose to revise them for the following reason.

Date: _____        _____
                                                        (Signature of Medical Director)

000087

EXHIBIT-H

ILLINOIS DEPARTMENT OF CORRECTIONS
**COMMITTED PERSON'S GRIEVANCE**

| Date 2/1/02 | Committed Person Doiakah Gray | ID# K70373 |
|---|---|---|

| Present Facility Stateville C.C. | Facility where grievance issue occurred: Stateville C.C. |
|---|---|

**NATURE OF GRIEVANCE:**

☐ Personal Property ☐ Mail Handling ☐ Restoration of Good Time ☐ Disability
☐ Staff Conduct ☐ Dietary ☒ Medical Treatment ☐ Other (specify)
☐ Transfer Denial by Facility ☐ Transfer Denial by Transfer Coordinator
☐ Disciplinary Report _____

Note: Protective Custody Denials may be grieved immediately via the local administration on the protective custody status notification

**Brief Summary of Grievance** I am writing this grievance due to the medical
treatment i have received while here in stateville.

Over a year ago i started haveing a mild problem with my left jaw

I was seen some of the members of the medical staff, and given 50

mg of indocnethacin, by Dr.Smith.

The indocnethacin worked for some time, but the problem with my

jaw soon retruned.I was later sent to the dental staff and was

told that my problem will be taken care of, but i was never

recalled by the dental staff.

This problem have been going on for over a year, and i am still

**Relief Requested** I am requesting that i be seen by a DR.who can address

and help me with my medical problem.

D.†.G—G         K70373       2  1  02

Date Received __2__ 5__02__

Response Can not be resolved at this level Referred to
the HCU, for review.

J. Hewitt                    2  5  02

**EMERGENCY REVIEW**

Date Received _____

000174

DEPARTMENT OF CORRECTIONS
COMMITTED PERSON'S GRIEVANCE

Date: 5/13/02    Committed Person: Doiakah GRAY    ID#: K70373
(Please Print)

Present Facility: Stateville C.C.    Facility where grievance issue occurred: Stateville C.C.

**NATURE OF GRIEVANCE:**

- [ ] Personal Property
- [ ] Staff Conduct
- [ ] Transfer Denial by Facility
- [ ] Mail Handling
- [ ] Dietary
- [ ] Transfer Denial by Transfer Coordinator
- [ ] Restoration of Good Time
- [x] Medical Treatment
- [ ] Disability
- [ ] Other (specify):

- [ ] Disciplinary Report: ___/___/___    Date of Report ___    Facility where issued ___

Note:    Protective Custody Denials may be grieved immediately via the local administration on the protective custody status notification

Complete: Attach a copy of any pertinent document (such as a Disciplinary Report, Shakedown Record, etc.) and send to:
    Counselor, unless the issue involves discipline, is deemed an emergency, or is subject to direct review by the Administrative Review Board
    Grievance Officer, only if the issue involves discipline at the present facility or issue not resolved by Counselor
    Chief Administrative Officer, only if EMERGENCY grievance
    Administrative Review Board, only if the issue involves transfer denial by the Transfer Coordinator, protective custody, involuntary
    administration of psychotropic drugs, issues from another facility except personal property issues, or issues not resolved by the Chief
    Administrative Officer

Brief Summary of Grievance: I am writing this grievance because of the medical
treatment i have received in stateville C.C.
5-21-99 I was seen by the B-House Doctor, because of a problem
i was haven with my left jaw. I was given 50mg of indocin for the
problem with my left jaw. 7-13-00 I was seen by the B-House sick
call Doctor for a reoccuring problem with my left jaw. I was
once again given 50mg of indocin 1-25-01 once again i was seen by
the B-House doctor for a reoccuring problem with my left jaw.
I was then ordered to take a X-Ray. After the X-Ray was done
my problem still went unaddressed from 5-21-99 through 6-26-01
Relief Requested: It has been (3) years snice the problem started with my
left jaw. The problem has become more severe and more ill over the
time. I am requesting for someone to treat both my jaw and address the problem.

- [ ] Check only if this is an EMERGENCY grievance due to a substantial risk of imminent personal injury or other serious or irreparable harm to self.

D-C-P    K70373    5, 13, 02
Committed Person's Signature    ID#    Date

(Continue on reverse side if necessary)

---

**Counselor's Response (if applicable)**

Date Received: 5, 14, 02

- [ ] Send directly to Grievance Officer
- [ ] Outside jurisdiction of this facility. Send to Administrative Review Board, P.O. Box 19277, Springfield, IL 62794-9277.

Response: Can not be resolved at [illegible] forwarded
to the HCV of [illegible]

MAY 1 5 2002

HEALTH CARE UNIT ADMINIST.

J. Mosell    5, 14, 02
Print Counselor's Name    Counselor's Signature    Date of Response

---

**EMERGENCY REVIEW**

Date received: ___/___/___    Is this determined to be of an emergency nature?
- [ ] Yes: expedite emergency grievance
- [ ] No: an emergency is not substantiated. Committed person should submit this grievance in the normal manner.

_____    ___/___/___
Chief Administrative Officer's Signature    Date

MEDICAL RECORDS    MAY 1 6 2002

000179

i was seen by the B-House sick call doctor (7) times and my problem was never accurately addressed during that time.

1-6-01 I was seen By the dental staff to have my teeth clean, told the dental about my problem with my left jaw, and beforwead me to see the oral surgeon.

I was seen by the oral surgeon on 9-28-01 and was told that a night guard may help with my problem in my jaw.

3-29-02 I was seen by the Dental staff, and my teeth was filed down. I was told that this was part of the evaluation for the night guard.

Since my last visit to the dental staff my problem with my left jaw has become more severe, and more ill.

000180

EXHIBIT-I

Doiakah Gray K-70373
Unit-C, Cell-458

November 17, 2003

Re: <u>Medical attention, dental</u>

To whom it may concern:

I am having severe TMJ concerns, and I tryed to procure access to see a dentist, through Stateville C.C. CMT, to no prevail.

I am requesting to be added to the dental list as soon as possible.

I thank you for your time and help in this matter, and I hope to hear from you very soon.

*W ill Be Sched Soon*

Truely yours,

Doiakah Gray, K-70373

000184

EXHIBIT-J

C455

ILLINOIS DEPARTMENT OF CORRECTIONS

## OFFENDER'S GRIEVANCE

| Date: October 4, 2011 | Offender: (Please Print) Dijakah Gray | ID#: K70373 |

| Present Facility: Stateville Correctional Center | Facility where grievance issued occurred: Stateville Correctional Center |

GRIEVANCE OFFICE

**NATURE OF GRIEVANCE:**

- [ ] Personal Property
- [x] Staff Conduct
- [ ] Transfer Denial by Facility
- [ ] Mail Handling
- [ ] Dietary
- [ ] Transfer Denial by Transfer Coordinator
- [ ] Restoration of Good Time
- [x] Medical Treatment
- [ ] Disability
- [ ] HIPAA
- [ ] Other (specify):

OCT 7 2011

STA #: _____

- [ ] Disciplinary Report: ____ / ____ / ____
  Date of Report — Facility where issued

**Note:** Protective Custody Denials may be grieved immediately via the local administration on the protective custody status notification.

**Complete:** Attach a copy of any pertinent document (such as a Disciplinary Report, Shakedown Record, etc.) and send to:
  **Counselor,** unless the issue involves discipline, is deemed an emergency, or is subject to direct review by the Administrative Review Board.
  **Grievance Officer,** only if the issue involves discipline at the present facility or issue not resolved by Counselor.
  **Chief Administrative Officer,** only if EMERGENCY grievance.
  **Administrative Review Board,** only if the issue involves transfer denial by the Transfer Coordinator, protective custody, involuntary administration of psychotropic drugs, issues from another facility except personal property issues, or issues not resolved by the Chief Administrative Officer.

**Brief Summary of Grievance:** On August 25 2011 the Grievant filed a grievance requesting pain medication for the Grievant's chronic headaches, migraines, and head spasms. The Grievant has a deteriorating Temple Mandibular Joint (TMJ) condition. This condition (TMJ) causes great stress on the Grievant's Jaw Joints, creating the chronic headaches, migraines, and head spasms. However, the Medical Department will not give me any pain medication or even call me for sick-call. I have written the med. Tech. Joe Sheery, numerous letters, and contacted the medical director Dr. Carter, all to no avail.

**Relief Requested:** Grievant request that you order the medical staff to schedule me for Sick-Call

[x] Check only if this is an EMERGENCY grievance due to a substantial risk of imminent personal injury or other serious or irreparable harm to self.

| Offender's Signature | ID# K70373 | Date 10, 4, 2011 |

(Continue on reverse side if necessary)

---

### Counselor's Response (if applicable)

Date Received: ____ / ____ / ____

- [ ] Send directly to Grievance Officer
- [ ] Outside jurisdiction of this facility. Send to Administrative Review Board, P.O. Box 19277, Springfield, IL 62794-9277

Response: _____

| Print Counselor's Name | Counselor's Signature | Date of Response |

---

### EMERGENCY REVIEW

10

Date Received: 10, 11, 11

Is this determined to be of an emergency nature?

- [ ] Yes; expedite emergency grievance
- [x] No; an emergency is not substantiated. Offender should submit this grievance in the normal manner.

Chief Administrative Officer's Signature  Marcus Hardy   Date 10, 12, 11

ILLINOIS DEPARTMENT OF CORRECTIONS
## OFFENDER'S GRIEVANCE

C455

| Date: October 13, 2011 | Offender: Dsiakah Gray (Please Print) | ID#: K76373 |
|---|---|---|

| Present Facility: Stateville Correctional Center | Facility where grievance issue occurred: Stateville Correctional Center |
|---|---|

**NATURE OF GRIEVANCE:**

- [ ] Personal Property
- [ ] Staff Conduct
- [ ] Transfer Denial by Facility
- [ ] Mail Handling
- [ ] Dietary
- [ ] Transfer Denial by Transfer Coordinator
- [ ] Restoration of Good Time
- [x] Medical Treatment
- [ ] Disability
- [ ] HIPAA
- [ ] Other (specify): _____

- [ ] Disciplinary Report: ____ / ____ / ____
  Date of Report        Facility where issued

**Note:** Protective Custody Denials may be grieved immediately via the local administration on the protective custody status notification.

**Complete:** Attach a copy of any pertinent document (such as a Disciplinary Report, Shakedown Record, etc.) and send to:
**Counselor**, unless the issue involves discipline, is deemed an emergency, or is subject to direct review by the Administrative Review Board.
**Grievance Officer**, only if the issue involves discipline at the present facility or issue not resolved by Counselor.
**Chief Administrative Officer**, only if EMERGENCY grievance.
**Administrative Review Board**, only if the issue involves transfer denial by the Transfer Coordinator, protective custody, involuntary administration of psychotropic drugs, issues from another facility except personal property issues, or issues not resolved by the Chief Administrative Officer.

**Brief Summary of Grievance:** The grievant has a degenerate Temple Mandibular Joint (TMJ) disorder (condition). The grievant has had this medical condition for over 10 years while incarcerated at Stateville Correctional Center. Through the years the TMJ has worsen from the time the grievant awakes, he is in constant pain. Grievant has trouble opening and closing his mouth because his Jaws lock-up. Prison officials are aware of the grievant's TMJ condition, specifically Dr. Garg, Dr. Fischman, Dr. Brown, Dr. Saffold, and Dr. Mitchell. Nonetheless, omissions have been made regarding the grievant's degenerative condition (TMJ), despite the agonizing pain and discomfort, yet still no treatment.

**Relief Requested:** The Grievant request full TMJ treatment.

- [ ] Check only if this is an EMERGENCY grievance due to a substantial risk of imminent personal injury or other serious or irreparable harm to self.

Offender's Signature _____ ID# K76373 Date 10, 13, 11

*(Continue on reverse side if necessary)*

| **Counselor's Response** (if applicable) | | |
|---|---|---|

Date Received: 10, 18, 11   [ ] Send directly to Grievance Officer   [ ] Outside jurisdiction of this facility. Send to Administrative Review Board, P.O. Box 19277, Springfield, IL 62794-9277

**Response:** A copy of this grievance has been forwarded to the HCU for review and response and the original grievance has been forwarded to the grievance office. There is no need to send your copy to the Grievance Office or the Health Care Unit. You will receive a final response from the Grievance office when the Health Care Unit responds to same. L. Devris

Print Counselor's Name _____  Counselor's Signature: X. Devris _____  Date of Response: 10, 18, 11

| **EMERGENCY REVIEW** | | 15 |
|---|---|---|

Date Received: ____ / ____ / ____   Is this determined to be of an emergency nature?
- [ ] Yes; expedite emergency grievance
- [ ] No; an emergency is not substantiated. Offender should submit this grievance in the normal manner.

Chief Administrative Officer's Signature _____   ____ / ____ / ____ Date

C435

ILLINOIS DEPARTMENT OF CORRECTIONS
**OFFENDER'S GRIEVANCE**

| Date: October 13, 2011 | Offender: (Please Print) Doriakah Gray | ID #: K70373 |
|---|---|---|
| Present Facility: Stateville Correctional Center | Facility where grievance issue occurred: Stateville Correctional Center | **GRIEVANCE OFFICE** OCT 24 2011 STAG |

**NATURE OF GRIEVANCE:**

☐ Personal Property    ☐ Mail Handling    ☐ Restoration of Good Time    ☐ Disability
☐ Staff Conduct    ☐ Dietary    ☒ Medical Treatment    ☐ HIPAA
☐ Transfer Denial by Facility    ☐ Transfer Denial by Transfer Coordinator    ☐ Other (specify)

☐ Disciplinary Report: _____ / _____ / _____
         Date of Report          Facility where issued

**Note:** Protective Custody Denials may be grieved immediately via the local administration on the protective custody status notification.

**Complete:** Attach a copy of any pertinent document (such as a Disciplinary Report, Shakedown Record, etc.) and send to:
     **Counselor**, unless the issue involves discipline, is deemed an emergency, or is subject to direct review by the Administrative Review Board.
     **Grievance Officer**, only if the issue involves discipline at the present facility or issue not resolved by Counselor.
     **Chief Administrative Officer**, only if EMERGENCY grievance.
     **Administrative Review Board**, only if the issue involves transfer denial by the Transfer Coordinator, protective custody, involuntary administration of psychotropic drugs, issues from another facility except personal property issues, or issues not resolved by the Chief Administrative Officer.

**Brief Summary of Grievance:** The grievant has a degenerate Temple Mandibular Joint (TMJ) disorder (condition). The grievant has had this medical condition for over 10 years while incarcerated at Stateville Correctional Center. Through the years the TMJ has worsen. From the time the grievant awakes, he is in constant pain. Grievant has trouble opening and closing his mouth because his jaws lock-up. Prison officals are aware of the grievant's TMJ condition specifically, Dr. Garg, Dr. Fischman, Dr. Brown, Dr. Soffeld and Dr. Mitchell. Nonetheless, omissions have been made regarding the grievant's degenerative condition (TMJ), despite the agonizing pain and discomfort; yet still no treatment.

**Relief Requested:** The Grievant request full TMJ treatment.

☐ Check only if this is an EMERGENCY grievance due to a substantial risk of imminent personal injury or other serious or irreparable harm to self.

_____    K70373    10, 13, 11
       Offender's Signature           ID#       Date

**(Continue on reverse side if necessary)**

| **Counselor's Response (if applicable)** | | |
|---|---|---|
| Date Received: _____ / _____ / _____ | ☐ Send directly to Grievance Officer | ☐ Outside jurisdiction of this facility. Send to Administrative Review Board, P.O. Box 19277, Springfield, IL 62794-9277 |

Response: _____

_____

_____

_____

_____      _____      _____
Print Counselor's Name        Counselor's Signature        Date of Response

| **EMERGENCY REVIEW** | |
|---|---|
| Date Received: 10, 26, 11 | Is this determined to be of an emergency nature?   ☐ Yes; expedite emergency grievance ☒ No: an emergency is not substantiated. Offender should submit this grievance in the normal manner. |

_Marcus Hardy_         10, 26, 11
Chief Administrative Officer's Signature        Date

Distribution: Master File; Offender         Page 1         DOC 0046 (Rev. 3/2005)

Printed on Recycled Paper

ILLINOIS DEPARTMENT OF CORRECTIONS
## OFFENDER'S GRIEVANCE

| Date: October 20 2011 | Offender: (Please Print) Duiakeh Gray | ID#: K20373 |
|---|---|---|

| Present Facility: | Facility where grievance issue occurred: | GRIEVANCE OFFICE |
|---|---|---|

OCT 24 2011

**NATURE OF GRIEVANCE:**

- [ ] Personal Property
- [ ] Staff Conduct
- [ ] Transfer Denial by Facility
- [ ] Mail Handling
- [ ] Dietary
- [ ] Transfer Denial by Transfer Coordinator
- [ ] Restoration of Good Time
- [x] Medical Treatment
- [ ] Disability
- [ ] HIPAA
- [ ] Other (specify):

- [ ] Disciplinary Report: ____/____/____
  Date of Report          Facility where issued

**Note:** Protective Custody Denials may be grieved immediately via the local administration on the protective custody status notification.

**Complete:** Attach a copy of any pertinent document (such as a Disciplinary Report, Shakedown Record, etc.) and send to:
Counselor, unless the issue involves discipline, is deemed an emergency, or is subject to direct review by the Administrative Review Board.
Grievance Officer, only if the issue involves discipline at the present facility or issue not resolved by Counselor.
Chief Administrative Officer, only if EMERGENCY grievance.
Administrative Review Board, only if the issue involves transfer denial by the Transfer Coordinator, protective custody, involuntary administration of psychotropic drugs, issues from another facility except personal property issues, or issues not resolved by the Chief Administrative Officer.

**Brief Summary of Grievance:** The grievent has a degenerate Temporo Mandibular Joint (TMJ) disorder (condition). The grievent has had this medical condition for over 10 years while incarcerated on Stateville. Through the years, the TMJ has worsen from the time grievent awakes in the morning. I am in constant pain. I cannot open my without pain and my Jaw Joints lock-up on me. This problem causes me headaches and to have pains in my face and Jaws, and heads. Dr. Brown, Dr. Offield, Dr. Fuchan, and Dr. Mitchell all know of my sever condness but has only given me a night guard, which does not help. Despite the agonizing pain and discomfort and lack of ease, No one is helping me. No medicating, no therapy or therapeutic treatment for the pain, or no treatment plan for the pain to deal with the TMJ. I am left in pain all day every day - HELP

**Relief Requested:** I request to be treated for my sever TMJ disorder; given pain medication; and therapy and/or therapeutic treatment; and to be placed on a treatment plan to deal with the TMJ and TMJ pain.

- [x] Check only if this is an EMERGENCY grievance due to a substantial risk of imminent personal injury or other serious or irreparable harm to self.

| _(signature)_ | K20373 | 10, 20, 11 |
|---|---|---|
| Offender's Signature | ID# | Date |

*(Continue on reverse side if necessary)*

---

### Counselor's Response (if applicable)

Date Received: ____/____/____
- [ ] Send directly to Grievance Officer
- [ ] Outside jurisdiction of this facility. Send to Administrative Review Board, P.O. Box 19277, Springfield, IL 62794-9277

Response: _____

| Print Counselor's Name | Counselor's Signature | Date of Response |
|---|---|---|

---

### EMERGENCY REVIEW

19

Date Received: 10, 26, 11

Is this determined to be of an emergency nature?
- [ ] Yes; expedite emergency grievance
- [x] No; an emergency is not substantiated. Offender should submit this grievance in the normal manner.

| _Marcus Hardy_ | 10, 26, 11 |
|---|---|
| Chief Administrative Officer's Signature | Date |

Printed on Recycled Paper

C-4 55

ILLINOIS DEPARTMENT OF CORRECTIONS
**OFFENDER'S GRIEVANCE**

| Date: December 23, 2011 | Offender: (Please Print) Dolakah Gray | ID#: K70373 |
|---|---|---|

| Present Facility: Stateville Curr. Ctr. | Facility where grievance issue occurred: Stateville Curr. Ctr. | GRIEVANCE OFFICE |
|---|---|---|

JAN 03 2012

STA # **4664**

**NATURE OF GRIEVANCE:**

- [ ] Personal Property
- [ ] Staff Conduct
- [ ] Transfer Denial by Facility
- [ ] Mail Handling
- [ ] Dietary
- [ ] Transfer Denial by Transfer Coordinator
- [ ] Restoration of Good Time
- [x] Medical Treatment
- [ ] Disability
- [ ] HIPAA
- [x] Other (specify): Dental (TMJ)

- [ ] Disciplinary Report: _____ / _____ / _____
  Date of Report                    Facility where issued

**Note:** Protective Custody Denials may be grieved immediately via the local administration on the protective custody status notification.

**Complete:** Attach a copy of any pertinent document (such as a Disciplinary Report, Shakedown Record, etc.) and send to:
**Counselor,** unless the issue involves discipline, is deemed an emergency, or is subject to direct review by the Administrative Review Board.
**Grievance Officer,** only if the issue involves discipline at the present facility or issue not resolved by Counselor.
**Chief Administrative Officer,** only if EMERGENCY grievance.
**Administrative Review Board,** only if the issue involves transfer denial by the Transfer Coordinator, protective custody, involuntary administration of psychotropic drugs, issues from another facility except personal property issues, or issues not resolved by the Chief Administrative Officer.

**Brief Summary of Grievance:** On December 2, 2011, Grievant was seen by Dr. Mitchell, D.D.S., for a bi-annual dental check up. Previous to Mitchell's examination, Grievant was scheduled by Mitchell for a tooth filling. On the date the Grievant was scheduled for the filling, he was seen by Dr. Fischman, D.D.S. Fischman told the Grievant that he did not need a filling, the Grievant deferred the filling based upon Fischman's professional opinion. However, the Grievant complained to Fischman regarding his degenerate Temple Mandibular Joint Disorder (TMJ). The Grievant told Fischman that he has a documented history of TMJ disorder and that over the last year the TMJ disorder has worsen. That is, inflammation, facial swelling, pulping of the jaw, loss of TMJ joint mobility - resulting in restriction of jaw motion and function of vertical opening of the Grievant's mouth, as well as headaches and head spasms. It has become very difficult for the

**Relief Requested:** Grievant request to be seen by Dr. Carter and sent to a TMJ expert

[x] Check only if this is an EMERGENCY grievance due to a substantial risk of imminent personal injury or other serious or irreparable harm to self.

_____ Offender's Signature     K70373     12, 23, 11
                                                  ID#          Date

(Continue on reverse side if necessary)

---

**Counselor's Response (if applicable)**

| Date Received: _____ / _____ / _____ | [ ] Send directly to Grievance Officer | [ ] Outside jurisdiction of this facility. Send to Administrative Review Board, P.O. Box 19277, Springfield, IL 62794-9277 |
|---|---|---|

Response: _____

_____

_____

_____

Print Counselor's Name          Counselor's Signature          Date of Response

---

**EMERGENCY REVIEW**

JAN 24 2012

| Date Received: 1, 4, 12 | Is this determined to be of an emergency nature? | [ ] Yes; expedite emergency grievance [x] No; an emergency is not substantiated. Offender should submit this grievance in the normal manner. |
|---|---|---|

_Marcus Hardy_ KS        1, 4, 12
Chief Administrative Officer's Signature     Date

ILLINOIS DEPARTMENT OF CORRECTIONS
## OFFENDER'S GRIEVANCE (Continued)

Grievant to open his mouth without pain. Fischman refused to provide the Grievant with any medical care, notifying the Grievant that he lacks the expertise to medically address any TMJ disorder, and therefore, the Grievant would simply have to remain in pain. Fischman also added it would be a waste of time to prescribe Grievant any pain medication because of the indefinite nature of TMJ disorder.

The Grievant complained to Mitchell on December 2, 2011, about the decline of his TMJ disorder, as outlined above. Mitchell told the Grievant that TMJ is a difficult condition to treat. Mitchell told Grievant that she will prescribe pain medication and provide him with an oral appliance, known as a nightguard.

On December 14, 2011, the Grievant was fitted for the nightguard, the Grievant requested the pain medication. Grievant also recited the decline of his TMJ condition. Mitchell notified the Grievant that Stateville and Wexford Healthcare Sources do not offer any treatment plan; any kind of therapy; or any educational information about TMJ because it is an ongoing condition that cost too much money to treat an indefinite condition or refer the Grievant to an expert for an indefinite condition that is life long, lasting. Mitchell told the Grievant that he would have to contact Dr. Carter, medical director if he wanted to discuss a treatment plan because none is offered by the dental department and that only Dr. Carter could refer the Grievant to a TMJ expert.

On December 15, 2011, the Grievant contacted Dr. Carter via a medical request to be examined and sent to a TMJ expert; a treatment plan, and pain medication. The Grievant has not been given any. Grievant request that Warden Hardy intervene and have Dr. Carter at the very least schedule the Grievant for a sick-call examination with Carter to determine the seriousness of the Grievant's TMJ condition.

ILLINOIS DEPARTMENT OF CORRECTIONS
## OFFENDER'S GRIEVANCE

| Date: December 24 2011 | Offender: (Please Print) Dvialach Gray | ID#: K70373 |
|---|---|---|

| Present Facility: Stateville Corr. Ctr. | Facility where grievance issue occurred: Stateville Corr. Ctr. |
|---|---|

**NATURE OF GRIEVANCE:**

- [ ] Personal Property
- [ ] Staff Conduct
- [ ] Transfer Denial by Facility

- [ ] Mail Handling
- [ ] Dietary
- [ ] Transfer Denial by Transfer Coordinator

- [ ] Restoration of Good Time
- [x] Medical Treatment
- [ ] Other (specify) Dental (TMJ)

**GRIEVANCE OFFICE**
- [ ] Disability
- [ ] HIPAA

**M-570**

- [ ] Disciplinary Report: ____ / ____ / ____
  Date of Report                    Facility

**Note:** Protective Custody Denials may be grieved immediately via the local administration on the protective custody status notification.

**Complete:** Attach a copy of any pertinent document (such as a Disciplinary Report, Shakedown Record, etc.) and send to:
  **Counselor,** unless the issue involves discipline, is deemed an emergency, or is subject to direct review by the Administrative Review Board.
  **Grievance Officer,** only if the issue involves discipline at the present facility or issue not resolved by the Counselor.
  **Chief Administrative Officer,** only if EMERGENCY grievance.
  **Administrative Review Board,** only if the issue involves transfer denial by the Transfer Coordinator, protective custody, involuntary administration of psychotropic drugs, issues from another facility except personal property issues, or issues not resolved by the Chief Administrative Officer.

**Brief Summary of Grievance:** The Grievant suffers from a Chronic degenerative Temple Mandibular Joint Disorder (TMJ). Grievant was notified by Dr. Mitchell that Stateville and Wexford do not offer a treatment plan or therapy for TMJ and that the only dental treatment offered is a oral appliance, Night-guard, which the Grievant has notified the dental staff does not help with the pain. Mitchell told the Grievant that he has to talk the medical director for any further treatment, that is, only Dr. Carter can schedule the Grievant to see a TMJ expert. The Grievant has written Dr. Carter several letters request to be seen and sent to a TMJ expert. The Grievant TMJ is causing his mouth to shut down resulting in more pain which the Grievant lives with daily for 24 hours a day; the Grievant has not even been pain medication.

**Relief Requested:** Grievant request to be seen by Dr. Carter and sent to a TMJ expert; placed on a treatment plan and given therapy; and pain medication

- [ ] Check only if this is an EMERGENCY grievance due to a substantial risk of imminent personal injury or other serious or irreparable harm to self.

| _(signature)_ | K70373 | 12 / 24 / 2011 |
|---|---|---|
| Offender's Signature | ID# | Date |

(Continue on reverse side if necessary)

---

| **Counselor's Response** (If applicable) |
|---|

Date Received: 12 / 23 / 11    [ ] Send directly to Grievance Officer    [ ] Outside jurisdiction of this facility. Send to Administrative Review Board, P.O. Box 19277, Springfield, IL 62794-9277

Response: A copy of this grievance has been forwarded to the HCU for review and response and the original grievance has been forwarded to the grievance office. There is no need to resend your copy to the grievance office or the health care unit. You will recieve a final response from the grievance office when health care responds to same.
L. Ennis

| L. Ennis | _(signature)_ Ennis | 12, 29, 11 |
|---|---|---|
| Print Counselor's Name | Counselor's Signature | Date of Response |

---

| **EMERGENCY REVIEW** |
|---|

Date Received: ____ / ____ / ____    Is this determined to be of an emergency nature?
- [ ] Yes: expedite emergency grievance
- [ ] No; an emergency is not substantiated. Offender should submit this grievance in the normal manner.

| _____ | ____ / ____ / ____ |
|---|---|
| Chief Administrative Officer's Signature | Date |

EXHIBIT-K

ILLINOIS DEPARTMENT OF CORRECTIONS
## RESPONSE TO COMMITTED PERSON'S GRIEVANCE

C454

| Grievance Officer's Report |
|---|

**Date Received:** 1/11/12      **Date of Review:** 2/28/12      **Grievance #** M570

**Committed Person:** Doiakah Gray                    **ID #:** K70373

**Nature of Grievance:** Medical Treatment

**Facts Reviewed:** Grievant claims that he wants to see a TMJ specialist.

Grievance Officer finds that memo dated 2/24/12 from Health Care Unit Jacqueline Mitchell, Dentist, states as follows: After a review of offender Gray, Doiakah K70373 the medical file shows: Inmate Gray was scheduled for a niteguard impression on 12/14/11 and charged the $2.00 co-pay. He received his Niteguard on 1/20/12 and was not charged again. All future dental services will be charged at $5.00 co-pay as directed by the State of Ilinois.

This Grievance Officer has no medical expertise or authority to contradict the doctor's/DON recommendation / diagnosis.

**Recommendation:**    **Issue appears to be resolved as grievant appears to be receiving appropriate medical**
**care at this time.**

Anna McBee, CCII                                     _Anna McBee_
        Print Grievance Officer's Name                              Grievance Officer's Signature
        **(Attach a copy of Committed Person's Grievance, including counselor's response if applicable)**

| Chief Administrative Officer's Response |
|---|

**Date Received:** 2/29/12      ☑ I concur      ☐ I do not concur      ☐ Remand

**Comments:**

_Marcus Hardy_  UO                                 2/29/12
        Chief Administrative Officer's Signature                                        Date

| Committed Person's Appeal To The Director |
|---|

I am appealing the Chief Administrative Officer's decision to the Director. I understand this appeal must be submitted within 30 days after the date of the Chief Administrative Officer's decision to the Administrative Review Board, P.O. Box 19277, Springfield, IL 62794-9277. (Attach a complete copy of the original grievance, including the counselor's response, if applicable, and any pertinent documents.)

_[signature]_                              K70373          3/7/12
        Committed Person's Signature                              ID#                Date

Distribution:   Master File; Committed Person                Page 1                        DOC 0047 (Eff. 10/2001)
                                                Printed on Recycled Paper                      (Replaces DC 5657)



**Illinois**
Department of
**Corrections**

**Pat Quinn**
Governor

**S. A. Godinez**
Director

Stateville Correctional Center / Rt. 53 / P.O. Box 112 / Joliet, IL 60434 / Telephone: (815) 727-3607 / TDD: (800) 526-0844

# MEMORANDUM

**DATE:**  February 24, 2012

**TO:**  **GRIEVANCE OFFICE**

**FROM:**  Jacqueline Mitchell, Dentist

**SUBJECT:  MEDICAL GRIEVANCE RESPONSE # M570**

After a review of offender Gray, Dorakah #K70373 medical file, the file shows that:

Inmate Gray was scheduled for a nitcgaurd Impression on 12.14.12 and charged the $2.00 co-pay. He received his Nitcgaurd on 1.20.12 and was not charged again. All future dental services will be charged at $5.00 co-pay as directed by the State of Illinois.

JM: asc

cc:    File

EXHIBIT-L

ILLINOIS DEPARTMENT OF CORRECTIONS
**OFFENDER'S GRIEVANCE**

1 455

| Date: August 25, 2011 | Offender: (Please Print) Doiakah Gray | ID#: K70373 |
|---|---|---|
| Present Facility: Stateville Corr. Ctr. | Facility where grievance issue occurred: Stateville Corr. Ctr. | |

**NATURE OF GRIEVANCE:**

- [ ] Personal Property
- [ ] Staff Conduct
- [ ] Transfer Denial by Facility
- [ ] Mail Handling
- [ ] Dietary
- [ ] Transfer Denial by Transfer Coordinator
- [ ] Restoration of Good Time
- [x] Medical Treatment
- [ ] Disability
- [ ] HIPAA
- [ ] Other (specify): _____

- [ ] Disciplinary Report: ___ / ___ / ___
  Date of Report                     Facility where issued

**Note:** Protective Custody Denials may be grieved immediately via the local administration on the protective custody status notification.

**Complete:** Attach a copy of any pertinent document (such as a Disciplinary Report, Shakedown Record, etc.) and send to:
Counselor, unless the issue involves discipline, is deemed an emergency, or is subject to direct review by the Administrative Review Board.
Grievance Officer, only if the issue involves discipline at the present facility or issue not resolved by Counselor.
Chief Administrative Officer, only if EMERGENCY grievance.
Administrative Review Board, only if the issue involves transfer denial by the Transfer Coordinator, protective custody, involuntary administration of psychotropic drugs, issues from another facility except personal property issues, or issues not resolved by the Chief Administrative Officer.

**Brief Summary of Grievance:** During the month of May, 2011, Grievant contacted the Health-care Unit informing the Department that he needs Acetominaphen or an alternative pain medication for the Grievant's Chronic headaches and migraines as well as spasms in the temple areas caused by a long-standing Temple Mandibular Joint (TMJ) condition. This condition (TMJ) cause great stress on the Grievant's jaw bones and both sides of his head, creating chronic headaches and migraines.

I have not had any Acetominaphen or pain medication to help me deal with the Chronic headaches, migraines, and temple spasms, for approximately (3) three months.

**Relief Requested:** Grievant request he be given Acetominaphen or an alternative pain medication.

- [ ] Check only if this is an EMERGENCY grievance due to a substantial risk of imminent personal injury or other serious or irreparable harm to self.

| _____ | K70373 | 8 , 25 , 11 |
|---|---|---|
| Offender's Signature | ID# | Date |

*(Continue on reverse side if necessary)*

| **Counselor's Response (if applicable)** | | |
|---|---|---|
| Date Received: 9 , 9 , 11 | [ ] Send directly to Grievance Officer | [ ] Outside jurisdiction of this facility. Send to Administrative Review Board, P.O. Box 19277, Springfield, IL 62794-9277 |

**Response:** A copy of this grievance has been forwarded to the HCU for review and response. The original has been forwarded to the grievance office. There is no need to send your copy to the grievance office or the health cornunit. You will receive a final response from the grievance office when the health care unit responds to same.

| L. Dennis | L. Dennis | 9 , 9 , 11 |
|---|---|---|
| Print Counselor's Name | Counselor's Signature | Date of Response |

| **EMERGENCY REVIEW** | | 4 |
|---|---|---|
| Date Received: ___ / ___ / ___ | Is this determined to be of an emergency nature? | [ ] Yes; expedite emergency grievance [ ] No; an emergency is not substantiated. Offender should submit this grievance in the normal manner. |
| | | ___ / ___ / ___ |
| Chief Administrative Officer's Signature | | Date |

EXHIBIT-M

AFFIDAVIT

AND

CERTIFICATE OF SERVICE

1. ON SEPTEMBER 19, 2011, THE AFFIANT PLACED A COPY OF THE ATTACHED LETTER, DATED SEPTEMBER 19, 2011, ADDRESSED TO JOE SHEENY (MEDICAL TECHICIAN), REFERENCED "RE: MEDICAL CARE (SEVERE HEADACHES)", IN THE INSTITUTIONAL MAILING SYSTEM AND A COPY IN UNIT-C'S MEDICAL DROP-BOX.

2. THE LETTERS, ABOVE 1, REQUEST MEDICAL TREATMENT FOR AFFIANT'S SEVERE HEADACHES, MIGRAINES, AND PAINFUL HEAD SPAMS IN THE TEMPLE AREAS.

2. ON SEPTEMBER 19, 2011, THE AFFIANT PLACED A COPY OF THE ATTACHED LETTER, DATED SEPTEMBER 19, 2011, ADDRESSED TO MEDICAL DIRECTOR CARTER, REFERENCED "RE: MEDICAL CARE (SEVERE HEADACHES)", IN THE INSTITUTIONAL MAILING SYSTEM AND A COPY IN UNIT-C'S MEDICAL DROP-BOX.

4. THE LETTERS, ABOVE 3, REQUEST MEDICAL TREATMENT FOR AFFIANT'S SEVERE HEADACHES, MIGRAINES, AND PAINFUL HEAD SPAMS IN THE TEMPLE AREAS.

5. THE AFFIANT SWEARS UNDER THE PENALTY OF LAW THAT ALL THE ABOVE IS TRUE TO THE BEST OF HIS KNOWLEDGE.

DOIAKAH GRAY

REGISTER NO. K-70373

SUBSCRIBED AND SWORN TO BEFORE ME THIS 19th DAY, SEPTEMBER 2011

_____
NOTARY PUBLIC

OFFICIAL SEAL
PHYLLIS BAKER
Notary Public - State of Illinois
My Commission Expires Jan 19, 2015

6

SEPTEMBER 19, 2011


MEDICAL DIRECTOR CARTER                    DOIAKAH GRAY
STATEVILLE CORR. CTR.                      REGISTER NO. K-70373
MEDICAL DEPARTMENT                         UNIT-C, CELL-455


                    RE: MEDICAL CARE (SEVERE HEADACHES)


DEAR DIRECTOR CARTER:

        I HAVE WRITTEN LETTERS TO THE MEDICAL DEPARTMENT; PLACED SICK-
CALL REQUESTS IN THE MEDICAL DROP BOX; WRITTEN LETTERS TO UNIT-C'S
MEDICAL TECHICIAN, JOE SHEENY; AND FILED A GRIVANCE TO RECEIVE
MEDICAL CARE.

        I HAVE A T.M.J. CONDITION, WHICH CAUSES SEVERE HEADACHES,
MIGRAINES, AND HEAD SPAMS IN BOTH OF MY TEMPLE AREAS.


        I NEED MEDICATION FOR SEVERE HEADACHES, MIGRAINES, AND HEAD
SPAMS. PLEASE SCHEDULE ME FOR SICK-CALL OR AN EMERGENCY ROOM
VISIT.


        SINCERELY,

        DOIAKAH GRAY
        REGISTER NO. K-70373


                                                                    7

SEPTEMBER 19, 2011

JOE SHEENY                          DOIAKAH GRAY

MEDICAL TECHICIAN                   REGISTER NO. K-70373

STATEVILLE CORR. CTR.               UNIT-C, CELL-455

MEDICAL DEPARTMENT

RE: MEDICAL CARE (SEVERE HEADACHES)

DEAR MR. SHEENY:

ON AUGUST 25, 2011, I FILED A GRIEVANCE REQUESTING MEDICATION
TO HELP ME WITH MY SEVERE HEADACHES. I HAVE A T.M.J CONDITION,
WHICH CAUSES SEVERE HEADACHES, MIGRAINES, AND PAINFUL HEAD SPAMS
IN MY TEMPLE AREAS.

I REQUEST TO BE GIVEN MEDICATION FOR THE HEADACHES, MIGRAINES,
AND SPAMS, SCHEDULE ME FOR SICK-CALL.

SINCERELY,

DOIAKAH GRAY

REGISTER NO. K-70373

EXHIBIT-N

February 24, 2012

Stop TMJ

Your free guide to real help on Bruxism - TMJ - Treatment



- Home
- About
- TMJ No More

You are here: Home / TMJ Basics / What is TMJ or Temporomandibular Joint?

# What is TMJ or Temporomandibular Joint?

*What is TMJ* actually? The temporomandibular joints (TMJ) is connecting the jawbone to the skull. Located at the sides of the head near each ear, these joints play an essential role in eating, speaking, and making facial expressions. In fact, TMJ is one of the most frequently used and complex joints in the entire body. Click *HERE* to read further detail of TMJ.



TMJ disorder can develop when one or both of the temporomandibular joints stop functioning properly. This may happen due to any number of causes and may result in chronic ear pain, jaw stiffness and soreness, difficulty opening the mouth, jaw popping or clicking, and headaches. Sufferers of TMJ disorder may experience either sharp pain or a dull, constant ache. Because the causes and symptoms of TMJ disorder are so varied, the condition is typically classified into three main sub-categories:

What is TMJ or Temporomandibular Joint?
Case: 1:12-cv-00244 Doc #: 127 Filed: 02/13/14 Page 101 of 145 PageID #: 803
Page 2 of 4

- Myofacial pain
- Internal derangement of the joint
- Inflammatory joint disease

These classifications help doctors develop more effective treatment options for sufferers of TMJ disorder, based on each patient's unique symptoms and needs. For proper diagnosis and treatment of TMJ conditions, a patient may require evaluations from multiple medical specialists. In addition to general dentists, dentists trained in neuromuscular dentistry, primary care physicians, and otolaryngologists (ear, nose, and throat specialists) are typically sought for TMJ diagnosis and care. These health care professionals can provide more information on what causes the condition, how it is treated, and other TMJ topics.

Hopefully above article will give you some knowledge of *"What is TMJ"*? You may read further detail of this topic on ***TMJ no More page***

Filed Under: TMJ Basics

Search this website ...   Search

**Recent post**

- Is There An Effective TMJ Treatment
- TMJ Disorder Prevention
- What Is Bruxism
- Teeth Grinding
- Bruxism Symptoms
- TMJ Surgery
- Save Your Smile Stop Grinding by Charles Harrison
- Risk Factor of Bruxism
- Getting the Right Info of TMJ treatment
- Bruxism Treatments and Medication
- Effects Of Bruxism
- Help Yourself First for TMJ
- Basic TMJ Treatment
- Jaw Pain
- How to Fix TMJ Disorder

EXHIBIT-O


**use the brand doctors recommend most.**

# MedicineNet.com
We Bring Doctors' Knowledge to You

[                              ] [ Search ]

| Home | Slideshow Pictures | Image Collection | Quizzes | Diseases & Conditions | Symptom Checker | Health & Living | Medica |

home > chronic pain center > chronic pain a-z list > temporomandibular joint disorder index > **temporomandibular joint disorder article**

Psoriasis
Symptoms, Ca


| Article | Related Diseases | Images & Quizzes |

[1] [2] [3] [4] [5] [ Next ]

# Temporomandibular Joint Disorder (TMJ Disorder)



Rheumatoid Arthritis Slideshow Pictures

Joint-Friendly Exercises Slideshow Pictures

Take the RA Quiz

Your G
Sympt
[ Pinpoi ]

Medical Author: William C. Shiel Jr., MD, FACP, FACR
Medical Editor: Melissa Conrad Stöppler, MD

Temporomandibular joint (TMJ) disorders facts

What is the temporomandibular joint?

What are TMJ disorders, and what are causes of TMJ disorders?

What are common TMJ symptoms?

How are patients evaluated and diagnosed when TMJ problems are suspected?

What is the treatment for TMJ disorders?

What is the prognosis (outlook) of TMJ disorder?

Can TMJ problems be prevented?

Patient Comments: Temporomandibular Joint Disorder (TMJ) - Treatments

Patient Comments: Temporomandibular Joint Disorder - Symptoms

Find a local Doctor in your town

Health questions? Get answers from experts and people like you - WebMD


Colgate
Use tog
for white
five day

*vs. brushing wit

## Temporomandibular joint (TMJ) disorders facts

The temporomandibular joint (TMJ) is the site where the upper jaw (maxilla) and lower jaw (mandible) meet.

TMJ disorders are a group of complex problems with many possible causes.

### What Are the Symptoms of TMD?

People with TMD can experience severe pain and discomfort that can be temporary or last for many years. More women than men

Arthritis R
RA: Mana
Gout and
Heat and

Featured (
How Well

- Symptoms of TMJ disorders include headache, ear pain, dizziness, and fullness or ringing in the ear.

There are many treatment options for TMJ disorders.

## What is the temporomandibular joint?

The temporomandibular joint (TMJ) is the area directly in front of the ear on either side of the head where the upper jaw (maxilla) and lower jaw (mandible) meet. Within the TMJ, there are moving parts that allow the upper jaw to close on the lower jaw. This joint is a typical sliding "ball and socket" that has a disc sandwiched between it. The TMJ is used throughout the day to move the jaw, especially in biting and chewing, talking, and yawning. It is one of the most frequently used joints of the body.

The temporomandibular joints are complex and are composed of muscles, tendons, and bones. Each component contributes to the smooth operation of the TMJ. When the muscles are relaxed and balanced and both jaw joints open and close comfortably, we are able to talk, chew, or yawn without pain.

We can locate the TMJ by putting a finger on the triangular structure in front of the ear. The finger is moved just slightly forward and pressed firmly while opening the jaw. The motion felt is from the TMJ. We can also feel the joint motion if we put a little finger against the inside front part of the ear canal. These maneuvers can cause considerable discomfort to a person who is experiencing TMJ difficulty, and doctors use them for making the diagnosis.

## What are TMJ disorders, and what are causes of TMJ disorders?

TMJ disorders are a group of complex problems of the jaw joint. TMJ disorders are also sometimes referred to as myofascial pain dysfunction and Costen's syndrome. Because muscles and joints work together, a problem with either one can lead to stiffness, headaches, ear pain, bite problems (malocclusion), clicking sounds, or locked jaws. The following are behaviors or conditions that can lead to TMJ disorders.

1. Teeth grinding and teeth clenching (bruxism) increase the wear on the cartilage lining of the TMJ. Those who grind or clench their teeth may be unaware of this behavior unless they are told by someone observing this pattern while sleeping or by a dental professional noticing telltale signs of wear and tear on the teeth. Many patients awaken in the morning with jaw or ear pain.

2. Habitual gum chewing or fingernail biting

---

experience TMD, and TMD is seen most commonly in people between the ages of 20 and 40.

Common symptoms of TMD include:

- Pain or tenderness in the face, jaw joint area, neck and shoulders, and in or around the ear when you chew, speak, or open your mouth wide
- Limited ability to open the mouth very wide
- Jaws that get "stuck" or "lock" in the open- or closed-mouth position
- Clicking, popping, or grating sounds in the jaw joint when opening or closing the mouth (which may or may not be accompanied by pain) or chewing
- A tired feeling in the face
- Difficulty chewing or a sudden uncomfortable bite □□" as if the upper and lower teeth are not fitting together properly
- Swelling on the side of the face
- May occur on one or both sides of the face

Other common symptoms of TMD include toothaches, headaches, neck aches, dizziness, earaches, hearing problems, upper shoulder pain, and ringing in the ears (tinnitus).

SOURCE:

WebMD Medical Reference

---

Top Heal
What's Lu

**Health So**

Birth Con
Bipolar Di
Treating [

**Ter
(TM

**Teeth Grir**

**Why Do Pe**

Although tee
and anxiety,
likely caused
crooked tee

**How Do I F**

Because gri
people are u
However, a
telltale symp
learn that the
who hears th

If you suspe
to your dent
and jaw for s
tenderness a

**Why Is Tee**

In some cas
fracturing, lc
grinding may
When these

**Read the Te**

3. Dental problems and misalignment of the teeth (malocclusion). Patients may complain that it is difficult to find a comfortable bite or that the way their teeth fit together has changed. Chewing on only one side of the jaw can lead to or be a result of TMJ problems.

4. Trauma to the jaws: Previous <u>fractures</u> in the jaw or facial bones can lead to TMJ disorders.

5. <u>Stress</u> frequently leads to unreleased nervous energy. It is very common for people under stress to release this nervous energy by either consciously or unconsciously grinding and clenching their teeth.

6. Occupational tasks or habits such as holding the telephone between the head and shoulder may contribute to TMJ disorders.

*Reviewed by Melissa Conrad Stöppler, MD on 7/11/2012*

---

> **Next:** What are common TMJ symptoms?

---

| 1 | 2 | 3 | 4 | 5 | Next |

**Temporomandibular Joint Disorder Index**    Glossary    Find a Local Doctor

Share This Article

---

## Patient Comments
Viewers share their comments

**Temporomandibular Joint Disorder (TMJ) - Treatments**

Question: What treatment has been effective for your temporomandibular joint (TMJ) disorder?

     View 16 Comments   •   Submit »

**Temporomandibular Joint Disorder - Symptoms**

Question: For temporomandibular joint disorder (tmj), what were the symptoms and signs you experienced?

     View 24 Comments   •   Submission Closed

---

# Suggested Reading on Temporomandibular Joint Disorder (TMJ) by Our Doctors



| Related Diseases & Conditions | 9 articles |

**Popula**

<u>all images »</u>
<u>all slidesho</u>



<u>Scales, Plaq</u>



Don't n
doctor
health

Find it firs
**facel**
Medic

WebM
Get trusted
information
Wherever..
Android, iP

Find Out

close window



**Source:** http://www.medicinenet.com/script/main/art.asp?articlekey=6075

# Temporomandibular Joint Disorder (TMJ Disorder)

Medical Author:
William C. Shiel Jr., MD, FACP, FACR



## William C. Shiel Jr., MD, FACP, FACR

Dr. Shiel received a Bachelor of Science degree with honors from the University of Notre Dame. There he was involved in research in radiation biology and received the Huisking Scholarship. After graduating from St. Louis University School of Medicine, he completed his Internal Medicine residency and Rheumatology fellowship at the University of California, Irvine. He is board-certified in Internal Medicine and Rheumatology.

View Full Profile
Medical Editor:
Melissa Conrad Stöppler, MD



## Melissa Conrad Stöppler, MD

Melissa Conrad Stöppler, MD, is a U.S. board-certified Anatomic Pathologist with subspecialty training in the fields of Experimental and Molecular Pathology. Dr. Stöppler's educational background includes a BA with Highest Distinction from the University of Virginia and an MD from the University of North Carolina. She completed residency training in Anatomic Pathology at Georgetown University followed by subspecialty fellowship training in molecular diagnostics and experimental pathology.

View Full Profile

- Temporomandibular joint (TMJ) disorders facts
- What is the temporomandibular joint?
- What are TMJ disorders, and what are causes of TMJ disorders?
- What are common TMJ symptoms?
- How are patients evaluated and diagnosed when TMJ problems are suspected?
- What is the treatment for TMJ disorders?
- What is the prognosis (outlook) of TMJ disorder?
- Can TMJ problems be prevented?
- Patient Comments: Temporomandibular Joint Disorder (TMJ) - Treatments
- Patient Comments: Temporomandibular Joint Disorder - Symptoms

## Temporomandibular joint (TMJ) disorders facts

- The temporomandibular joint (TMJ) is the site where the upper jaw (maxilla) and lower jaw (mandible) meet.
- TMJ disorders are a group of complex problems with many possible causes.

EXHIBIT- P

# WebMD

Article Link: http://www.webmd.com/oral-health/guide/temporomandibular-disorders

# Oral Care

**Tools & Resources**

Can Fluoride Cause Migraines?          Bad Breath Culprit: Diabetes

Baking Soda as Toothpaste?          Daily Mouthwash: Yes or No?

Signs of Gum Disease          Can Stress Hurt Your Teeth?

🔊 **Listen**

# Temporomandibular Disorders (TMD)

Temporomandibular disorders (TMD) occur as a result of problems with the jaw, jaw joint and surrounding facial muscles that control chewing and moving the jaw. These disorders are often incorrectly called TMJ, which stands for temporomandibular joint.

**What Is the Temporomandibular Joint (TMJ)?**

The temporomandibular joint (TMJ) is the hinge joint that connects the lower jaw (mandible) to the temporal bone of the skull, which is immediately in front of the ear on each side of your head. The joints are flexible, allowing the jaw to move smoothly up and down and side to side and enabling you to talk, chew, and yawn. Muscles attached to and surrounding the jaw joint control the position and movement of the jaw.

**What Causes TMD?**

The cause of TMD is not clear, but dentists believe that symptoms arise from problems with the muscles of the jaw or with the parts of the joint itself.

Injury to the jaw, temporomandibular joint, or muscles of the head and neck – such as from a heavy blow or whiplash – can cause TMD. Other possible causes include:

Grinding or clenching the teeth, which puts a lot of pressure on the TMJ

Dislocation of the soft cushion or disc between the ball and socket

Presence of osteoarthritis or rheumatoid arthritis in the TMJ

Stress, which can cause a person to tighten facial and jaw muscles or clench the teeth

**Temporomandibular Joint (TMJ)**



© 2003 WebMD Inc.

# WebMD

Article Link: http://www.webmd.com/oral-health/tc/temporomandibular-tm-disorders-treatment-overview

# Oral Care

## Tools & Resources

Daily Mouthwash: Yes or No?           Lower Your Oral Cancer Risk

Eww! What's Living in Your Mouth?     Bad Breath Culprit: Diabetes

Best Foods for Your Teeth             Can Fluoride Cause Migraines?

## Temporomandibular (TM) Disorders - Treatment Overview

Font size:

A A A

Share this:

The goal of treatment for temporomandibular (TM) disorders is to relieve pain in the jaw and restore normal jaw movement and function. Several treatment approaches are effective. Often, simple home treatment measures can successfully relieve jaw pain without medical or dental treatment. For chronic, muscle-related TM disorders, standard medical care can include muscle relaxation measures, biofeedback, stress management, or cognitive-behavioral therapy.

The National Institutes of Health (NIH) recommends conservative, noninvasive treatment measures for TM disorders. For first-time treatment of TM disorder symptoms, the NIH recommends avoiding invasive or irreversible procedures, such as surgery or dental/orthodontic work.[3]

The most common dental treatment for TM disorders is using splints or bite plates for a short period of time. Splints-called occlusal splints-are usually clear, plastic appliances that fit between the upper and lower teeth. They help reduce grinding and clenching (bruxism) and, in turn, can relieve muscle tension and pain. This may allow a displaced disc to return to its normal position. Splints are used over short periods of time so that they do not cause permanent changes in the teeth or jaw.

Temporarily avoid dental work (such as crowns, bridges, or shaving down the teeth) and orthodontic treatments involving permanent changes to the jaw. At best, these measures may not work any better than conservative treatments. At worst, they can cause irreversible damage. If your doctor recommends surgery or other treatment that involves permanent changes, be sure to get a second opinion before you start treatment.

 TM disorder: Should I have surgery for jaw pain?

See the Home Treatment, Other Treatment, and Surgery sections of this topic for specific treatment options.

## What To Think About

Often, structural problems in the jaw, such as disc displacement, can be improved with conservative (nonsurgical) treatment, especially when they are treated early.

In the past, teeth not fitting together properly (malocclusion) was considered to be a cause of TM disorders, and braces (orthodontics) were used to treat them. Current research suggests that orthodontic treatment and malocclusion do not trigger TM disorders or make them worse.[2, 2]

Most health and dental insurance plans do not cover TM disorders. Check with your insurance provider to find out whether you are covered before incurring medical or dental expenses related to diagnosis or treatment.

**WebMD Medical Reference from Healthwise**



Last Updated: May 04, 2010

*This information is not intended to replace the advice of a doctor. Healthwise disclaims any*
*liability for the decisions you make based on this information.*



Article Link: http://www.webmd.com/oral-health/tc/temporomandibular-tm-disorders-what-happens

# Oral Care

## Tools & Resources

Natural Remedies for Dry Mouth

Daily Mouthwash: Yes or No?

Eww! What's Living in Your Mouth?

Baking Soda as Toothpaste?

Best Foods for Your Teeth

Can Fluoride Cause Migraines?

## Temporomandibular (TM) Disorders - What Happens

Font size:

A A A

Share this:

The course of temporomandibular (TM) disorders caused by muscle tension varies depending on the cause of the muscle tension.

If muscle tension is related to a one-time overuse injury (such as holding your mouth open for a long time during a dental exam), the pain and discomfort may go away without treatment.

If there is long-lasting (chronic) muscle tension due to stress, anxiety, an injury or blow to the jaw, or habits like grinding the teeth during sleep, treatment (including changing certain habits) may relieve pain and discomfort. If chronic muscle tension is not treated, it may gradually cause changes in the joint structure or osteoarthritis.

TM disorders caused by problems in the structure of the jaw joint 🔳 may:

Respond well to nonsurgical treatment, if treated early.

Get worse, if not treated. Long-term consequences include injury to the disc or other tissues in the joint, arthritis, or chronic pain.

### Chronic pain

In some cases, TM disorders can be extremely painful and disabling and last a long time. Such chronic pain can affect a person's overall quality of life by increasing stress, making it hard to do a job, and interfering with personal life. Depression and anxiety are common results of chronic pain. In these cases, it is especially important to seek treatment for TM disorder pain and for related depression and anxiety.

**WebMD Medical Reference from Healthwise**



Last Updated: May 04, 2010

*This information is not intended to replace the advice of a doctor. Healthwise disclaims any liability for the decisions you make based on this information.*

© 1995-2012 Healthwise, Incorporated. Healthwise, Healthwise for every health decision, and the Healthwise logo are trademarks of Healthwise, Incorporated.

## TEMPOROMANDIBULAR (TM) DISORDERS TOPICS

Topic Overview

Health Tools

Cause

Symptoms

**What Happens**

What Increases Your Risk

When To Call a Doctor

Exams and Tests

Treatment Overview

Prevention

Home Treatment

Medications

Surgery

Other Treatment

Other Places To Get Help

Related Information

References

Credits

**WebMD**

Article Link: http://www.webmd.com/oral-health/guide/temporomandibular-disorders?page=2

# Oral Care

## Tools & Resources

| | |
|---|---|
| Natural Remedies for Dry Mouth | Bad Taste After Chemo? |
| Eww! What's Living in Your Mouth? | Bad Breath Culprit: Diabetes |
| Lower Your Oral Cancer Risk | Daily Mouthwash: Yes or No? |

 **Listen**

## Temporomandibular Disorders (TMD)

(continued)

### How Is TMD Diagnosed? continued...

Your dentist will examine your temporomandibular joints for pain or tenderness; listen for clicking, popping, or grating sounds during jaw movement; look for limited motion or locking of the jaw while opening or closing the mouth; and examine bite and facial muscle function. Sometimes panoramic X-rays will be taken. These full face X-rays allow your dentist to view the entire jaws, temporomandibular joint, and teeth to make sure other problems aren't causing the TMD symptoms. Sometimes, other imaging tests, such as magnetic resonance imaging (MRI) or a computer tomography (CT), are needed. The MRI views the soft tissue such as the TMJ disc to see if it is in the proper position as the jaw moves. A CT scan helps view the bony detail of the joint.

Your dentist may decide to send you to an oral surgeon (also called an oral and maxillofacial surgeon) for further care and treatment. This oral health care professional specializes in surgical procedures in and about the entire face, mouth, and jaw area.

### What Treatments Are Available for TMD?

Treatments for TMD range from simple self-care practices and conservative treatments to injections and surgery. Most experts agree that treatment should begin with conservative, nonsurgical therapies first, with surgery left as the last resort. Many of the treatments listed below often work best when used in combination.

### Basic Treatments for TMD

Some basic, conservative treatments for TMD include:

**Apply moist heat or cold packs.** Apply an ice pack to the side of your face and temple area for about 10 minutes. Do a few simple stretching exercises for your jaw (as instructed by your dentist or physical therapist). After exercising, apply a warm towel or washcloth to the side of your face for about 5 minutes. Perform this routine a few times each day.

**Eat soft foods.** Eat soft foods such as yogurt, mashed potatoes, cottage cheese, soup, scrambled eggs, fish, cooked fruits and vegetables, beans, and grains. In addition, cut foods into small pieces to decrease the amount of chewing required. Avoid hard and crunchy foods (like hard rolls, pretzels, raw carrots), chewy foods (like caramels and taffy) and thick and large foods that require your mouth to open wide to fit.

**Take medications.** To relieve muscle pain and swelling, try nonsteroidal anti-inflammatory drugs (NSAIDs), such as naproxen or ibuprofen (Advil, Motrin, Aleve). Your dentist can prescribe higher doses of these or other drugs for pain relief. Muscle relaxants, especially for people who grind or clench their teeth, can help relax tight jaw muscles. Anti-anxiety medications can help relieve stress that is sometimes thought to aggravate TMD. Antidepressants, when used in low doses, can also help reduce or control pain. Muscle relaxants, anti-anxiety drugs, and antidepressants are available by prescription only.

**Low-level laser therapy.** This is used to reduce the pain and inflammation, as well as increase range of motion to the neck and in opening the mouth.

**Wear a splint or night guard.** Splints and night guards are plastic mouthpieces that fit over the upper and lower teeth. They prevent the upper and lower teeth from coming together, lessening the effects of clenching or grinding the teeth. They

also correct the bite by positioning the teeth in their most correct and least traumatic position. The main difference between splints and night guards is that night guards are only worn at night and splints are worn all the time. Your dentist will discuss with you what type of mouth guard appliance you may need.

**Undergo corrective dental treatments.** Corrective treatments including replacing missing teeth and using crowns, bridges, or braces to balance the biting surfaces of your teeth or to correct a bite problem.

**Avoid extreme jaw movements.** Keep yawning and chewing (especially gum or ice) to a minimum and avoid extreme jaw movements such as yelling or singing.

**Don't rest your chin on your hand** or hold the telephone between your shoulder and ear. Practice good posture to reduce neck and facial pain.

**Keep your teeth slightly apart** as often as you can to relieve pressure on the jaw. To control clenching or grinding during the day, place your tongue between your teeth.

**Learning relaxation techniques** to help control muscle tension in the jaw. Ask your dentist about the need for physical therapy or massage. Consider stress reduction therapy, including biofeedback.

< PREVIOUS PAGE    1 | 2 | 3 | 4  NEXT PAGE >

Save This Article For Later

**WebMD Medical Reference**

 **Oral Care Guide**

**1**  Teeth, Gums, Tongue          **4**  Treatments & Surgery

**2**  Other Oral Problems          **5**  Resources & Tools

**3**  Dental Care Basics

## Lifetime of Vaccines



Understand How Vaccines Work

Common Vaccine Questions Answered

Ask Your Health Care Professional about Vaccines

**Get the Facts**

From Our Sponsor  **MERCK**

From Our Sponsor *Lilly*

## Chronic Osteoarthritis Pain: Know Your Options



Prepare for Your Doctor Visit

Find Out about a Treatment Option

Learn About a Free Trial Offer

**Find Out More**

# WebMD

# Oral Care

### Tools & Resources

| | |
|---|---|
| Baking Soda as Toothpaste? | Can Stress Hurt Your Teeth? |
| Can Fluoride Cause Migraines? | Best Foods for Your Teeth |
| Signs of Gum Disease | Daily Mouthwash: Yes or No? |

🔊 **Listen**

## Temporomandibular Disorders (TMD)

(continued)

### More Controversial Treatments for TMD

When the basic treatments listed above prove unsuccessful, your dentist may suggest one or more of the following treatments for TMD:

**Transcutaneous electrical nerve stimulation (TENS).** This therapy uses low-level electrical currents to provide pain relief by relaxing the jaw joint and facial muscles. This treatment can be done at the dentist's office or at home.

**Ultrasound.** Ultrasound treatment is deep heat that is applied to the TMJ to relieve soreness or improve mobility.

**Trigger-point injections.** Pain medication or anesthesia is injected into tender facial muscles called "trigger points" to relieve pain.

**Radio wave therapy.** Radio waves create a low level electrical stimulation to the joint, which increases blood flow. The patient experiences relief of pain in the joint.

### Surgery for TMD

Surgery for TMD should only be considered after all other treatment options have been unsuccessful. Because surgery is irreversible, it is wise to get a second or even third opinion from other dentists.

There are three types of surgery for TMD: arthrocentesis, arthroscopy, and open-joint surgery. The type of surgery needed depends on the TMD problem.

**Arthrocentesis.** This is a minor procedure performed in the office under general anesthesia. It is performed for sudden-onset, closed lock cases (restricted jaw opening) in patients with no significant prior history of TMJ problems. The surgery involves inserting needles inside the affected joint and washing out the joint with sterile fluids. Occasionally, the procedure may involve inserting a blunt instrument inside of the joint. The instrument is used in a sweeping motion to remove tissue adhesion bands and to dislodge a disc that is stuck in front of the condyle (the part of your TMJ consisting of the "ball" portion of the "ball and socket")

**Arthroscopy.** Patients undergoing arthroscopic surgery for TMD first are given general anesthesia. The surgeon then makes a small incision in front of the ear and inserts a small, thin instrument that contains a lens and light. This instrument is hooked up to a video screen, allowing the surgeon to examine the TMJ and surrounding area. Depending on the cause of the TMD, the surgeon may remove inflamed tissue or realign the disc or condyle.

Compared with open surgery, this surgery is less invasive, leaves less scarring, and is associated with minimal complications and a shorter recovery time. Depending on the cause of the TMD, arthroscopy may not be possible, and open-joint surgery may be necessary.

**Open-joint surgery.** Patients undergoing open-joint surgery also are first given general anesthesia. Unlike arthroscopy, the entire area around the TMJ is opened so that the surgeon can get a full view and better access. There are many types of open-joint surgeries. This treatment may be necessary if:

The bony structures that comprise the jaw joint are deteriorating

There are tumors in or around your TMJ

There is severe scarring or chips of bone in the joint

< PREVIOUS PAGE     1 | 2 | 3 | 4   NEXT PAGE >

Save This Article For Later

**WebMD Medical Reference**

 **Oral Care Guide**

**1** Teeth, Gums, Tongue

**2** Other Oral Problems

**3** Dental Care Basics

**4** Treatments & Surgery

**5** Resources & Tools

## Lifetime of Vaccines

Understand How Vaccines Work

Common Vaccine Questions Answered

Ask Your Health Care Professional about Vaccines

**Get the Facts**



From Our Sponsor  **MERCK**

From Our Sponsor *Lilly*

## Depressed? Talk Openly with Your Doctor

Prepare for Your Doctor Visit

Learn about a Treatment Option

**Get the Facts**





Article Link: http://www.webmd.com/oral-health/tc/temporomandibular-tm-disorders-medications

# Oral Care

### Tools & Resources

Can Stress Hurt Your Teeth?         Signs of Gum Disease

Daily Mouthwash: Yes or No?         Best Foods for Your Teeth

Eww! What's Living in Your Mouth?    Baking Soda as Toothpaste?

## Temporomandibular (TM) Disorders - Medications

Font size:

A A A

Share this:

You can use medicine to relieve the pain of a temporomandibular (TM) disorder. Short-term use of nonsteroidal anti-inflammatory drugs (NSAIDs), narcotics, muscle relaxants, or antidepressant medicines can relieve or reduce inflammation, control pain, and relax the jaw muscles.

### Medication Choices

Nonsteroidal anti-inflammatory drugs (NSAIDs) are used to treat inflammation and pain. These are the most commonly used medicines for TM disorders.

Narcotic pain relievers (such as acetaminophen with codeine or hydrocodone) are used in some cases of acute, severe pain. Because narcotics are addictive, they are usually not taken long term.

Muscle relaxants, such as diazepam (Valium) or cyclobenzaprine (Flexeril), are used in some cases of acute pain or prolonged muscle spasm. Because they are addictive, sedating, and can cause depression or make it worse, muscle relaxants should be taken at the lowest possible dose and are usually not used long term.

Low doses of tricyclic antidepressants, such as amitriptyline, can effectively relieve chronic pain and make treatment more successful.[4] These medicines have also been helpful for improving disrupted sleep patterns, which can cause bruxism.

### What To Think About

Nonsteroidal anti-inflammatory drugs (NSAIDs) do not cure TM disorders, but they may reduce pain and inflammation, which allows you to do prescribed jaw exercises that can start the healing process. NSAIDs may be prescribed on a regular basis for 1 to 2 weeks to help reduce inflammation even though the pain has subsided.

Your doctor may prescribe an antidepressant, not necessarily because you suffer from depression but to help treat chronic pain or nighttime bruxism.

**Recommended Related to Oral Health**

**How Your Oral Health Affects Your Overall Wellness**

When Joanne Maglares, now 50, visited her dentist for a broken tooth from chewing on ice, she had no inkling that her overall health was in jeopardy. A scholarship coordinator at a New York City high school and mother of four, she was so consumed with work and family that she often ignored her own well-being. But her dentist took one look at her mouth, noticed multiple tooth fractures and rapidly advancing gum (periodontal) disease, and surmised that she had an underlying health problem."Those were...

**Read the How Your Oral Health Affects Your Overall Wellness article**
**> >**

**WebMD**

Article Link: http://www.webmd.com/oral-health/tc/temporomandibular-tm-disorders-references

# Oral Care

## Tools & Resources

Lower Your Oral Cancer Risk

Signs of Gum Disease

Can Stress Hurt Your Teeth?

Daily Mouthwash: Yes or No?

Eww! What's Living in Your Mouth?

Baking Soda as Toothpaste?

## Temporomandibular (TM) Disorders - References

Font size:

A A A

Share this:

### Citations

1. Scrivani SJ, et al. (2008). Temporomandibular disorders. New England Journal of Medicine, 359(25): 2693-2705.

2. Koh H, Robinson PG (2004). Occlusal adjustment for treating and preventing temporomandibular joint disorders. Journal of Oral Rehabilitation, 31(4): 287-292.

3. National Institutes of Health (1996). Management of temporomandibular disorders. Technology Assessment Conference Statement, April 29-May 1, 1996. Available online: http://consensus.nih.gov/1996/1996TemporomandibularDisorders018PDF.pdf.

4. Rizatti-Barbpsa CM, et al. (2003). Clinical evaluation of amitriptyline for the control of chronic pain caused by temporomandibular joint disorders. Journal of Craniomandibular Practice, 21(3): 221-225.

5. Tucker MR, et al. (2008). Management of temporomandibular disorders. In JR Hupp et al., eds., Contemporary Oral and Maxillofacial Surgery, 5th ed., pp. 629-649. St. Louis: Mosby Elsevier.

### Other Works Consulted

American Society of Temporomandibular Joint Surgeons (2003). Guidelines for diagnosis and management of disorders involving temporomandibular joint and related musculoskeletal structures. Cranio, 21(1): 68-76.

Ohrbach R, Burgess J (2009). Temporomandibular disorders and orofacial pain. In RE Rakel, ET Bope, eds., Conn's Current Therapy 2009, pp. 988-994. Philadelphia: Saunders Elsevier.

**WebMD Medical Reference from Healthwise**

 healthwise
for every health decision

Last Updated: May 04, 2010

*This information is not intended to replace the advice of a doctor. Healthwise disclaims any liability for the decisions you make based on this information.*

© 1995-2011 Healthwise, Incorporated. Healthwise, Healthwise for every health decision, and the Healthwise logo are trademarks of Healthwise, Incorporated.

### TEMPOROMANDIBULAR (TM) DISORDERS TOPICS

Topic Overview

Health Tools

Cause

Symptoms

What Happens

What Increases Your Risk

When To Call a Doctor

Prevention

Home Treatment

Medications

Surgery

Other Treatment

Other Places To Get Help

Related Information

EXHIBIT - Q

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | | |
|---|---|---|
| DOIAKAH GRAY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 12 C 244 |
| | ) | Honorable Judge Gary Feinerman |
| IMHOTEP CARTER, et al., | ) | |
| | ) | |
| Defendants, | ) | |

## **CERTIFICATE OF SERVICE VIA US MAIL**

The undersigned certifies that a copy of **DEFENDANT MITCHELL-LAWSHEA'S RESPONSE TO PLAINTIFF'S FIRST INTERROGATORIES** was served by U.S. Mail on the Plaintiff: DOIAKAH GRAY - # K-70373, Stateville –STV, P.O. Box 112, Joliet, Illinois 60434, on the 27th day of January, 2014.

LISA MADIGAN
Attorney General of Illinois

Respectfully submitted,


/s/ Agnes Ptasznik
AGNES PTASZNIK
Assistant Attorney General
General Law Bureau
100 West Randolph Street, 13th Floor
Chicago, Illinois 60601
(312) 814 – 4217

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | | |
|---|---|---|
| DOIAKAH GRAY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 12 C 244 |
| | ) | Honorable Judge Gary Feinerman |
| IMHOTEP CARTER, et al., | ) | |
| | ) | |
| Defendants, | ) | |

## DEFENDANTS' RESPONSE TO PLAINTIFF'S FIRST
## SUBMISSION OF INTERROGATORIES

1. Please state the full name and title of the person answering these interrogatories?

**ANSWER:** **Dr. Jaqueline Mitchell-Lawshea.**

2. Please state the following:

   a. How long have you been employed at Stateville Correctional Center ("Stateville")

**ANSWER:** **I have been employed at Stateville from February 18, 2002, to the present.**

   b. If you are the Dental Director (supervisor) at Stateville, if the answer is yes, please state how long you have been the supervisor of the dental department at Stateville?

**ANSWER:** **I am not the Dental Director at Stateville.**

4. Please state the following:

   c. If you are under the supervision of Wexford as a dentist in Stateville's dental department.

**ANSWER:** **I am not an employee of Wexford. I am a state employee. I am supervised by the Health Care Unit Administrator, who is also a state employee. The dental department is a component of the medical unit, which is overseen by the Medical Director at Stateville, who is employed by Wexford. I am not supervised by the Medical Director.**

    d.  If you have ever been under the Supervision of Wexford as a dentist and/or supervisor of Stateville's dental department?

**ANSWER:**   **The Medical Director oversees my work as a dentist in the dental unit. I am not the supervisor of Stateville's dental department.**

    e.  If you were ever under the supervision of Dr. Imhotep Carter ("Dr. Carter") (former medical director at Stateville), if the answer is yes, please state when and what that supervision consisted of?

**ANSWER:**   **At some point in time, Dr. Carter was the Medical Director at Stateville. I am not supervised by the Medical Director.**

5.  Please state the following:

    a.  If you reported to Dr. Carter about concerns of the dental department at Stateville?

**ANSWER:**   **Yes. Clinical issues in dental, that were problems beyond my scope of care, were referred to the Medical Director.**

    b.  If Dr. Carter supervised the dental department at Stateville?

**ANSWER:**   **Dr. Carter supervised the dental employees at Stateville, who were employed by Wexford, and would oversee the dental employees employed by the state.**

    c.  If you were required to report to Dr. Carter about the overall care of Stateville's dental department?

**ANSWER:**   **No.**

6.  Please state the following:

    a.  If you have or have had access to any of Wexford's contract information between Wexford and IDOC?

**ANSWER:**   **The contract with Wexford and the IDOC is publicly available.**

    b.  If you have or have had access to any of Wexford's medical policies and procedures, if the answer is yes, please state the name(s) of the medical policies and procedures?

**ANSWER:**   **No, I do not have access to Wexford medical policies and procedures.**

c. If you have reviewed any of Wexford's medical policies and procedures about Tempormandibular Joint Disorder ("TMJ"), if the answer is yes, please state the name(s)of the documents you reviewed?

**ANSWER:** **No, I do not have access to Wexford medical policies and procedures.**

d. If you have ever reviewed any of Wexford's dental policies, if the answer is yes, please state the name(s) of the dental policies?

**ANSWER:** **No, I do not have access to Wexford medical policies and procedures.**

e. If you have had any meetings and/or any communication with Dr. Carter about Wexford's medical policies and procedures related to dental care at Stateville?

**ANSWER:** **No.**

7. Please state the following:

a. The name(s) of all other prison officials who supervise the dental department at Stateville besides you, please state the person(s) name, title, and if that person works for IDOC or Wexford?

**ANSWER:** **Royce Brown-Reed is the current Health Care Unit Administrator, and she is employed by the IDOC. Dr. Saleh Obaisi is the current Medical Director at Stateville and is employed by Wexford.**

b. The name(s) of your supervisor?

**ANSWER:** **My supervisor is Royce Brown-Reed, the current Health Care Unit Administrator.**

c. Who you report to about providing inmates with dental care at Stateville, please state if he/she works for IDOC or Wexford?

**ANSWER:** **I report to Royce Brown-Reed is the current Health Care Unit Administrator (IDOC employee) and to Dr. Obaisi, the current Medical Director (Wexford employee), for outside-of-Stateville referrals.**

8. Please state the following:

a. If Dr. Carter supervised you as the Dental Director at Stateville?

**ANSWER:** **I was never the Dental Director and Dr. Carter never supervised me.**

b. If you held meetings with Dr. Carter about dental services at Stateville?

**ANSWER:** **Yes.**

  d. If Dr. Carter communicate with you about your dental expertise?

**ANSWER:** **No.**

  e. What was Dr. Carter's role with the dental department at Stateville?

**ANSWER:** **Dr. Carter, as Medical Director, made sure that the dental care was provided accurately and accordingly.**

 9. Please state the following:

  a. If you are responsible for ensuring that Wexford's medical policies and procedures found within Wexford's medical manual(s) are followed by Wexford dentist at Stateville?

**ANSWER:** **No.**

  b. If you are responsible for ensuring that Wexford's policies and procedures are followed at Stateville's dental department?

**ANSWER:** **No.**

 10. Please state the following:

  a. Any and all procedures available that an inmate can use to request dental treatment at Stateville?

**ANSWER:** **An inmate can submit a request for treatment to the dental unit.**

  b. What procedures can an inmate use if he sought dental treatment but was not scheduled for dental care?

**ANSWER:** **An inmate can submit a request for treatment to the dental unit and grievance.**

  c. Can inmates request to be scheduled for dental care at the dental department by a medical technician?

**ANSWER:** **Yes.**

 11. Please state the following:

  a. If you are aware of a medical condition name Bruxism, if the answer is yes, please state what the condition consist of?

**ANSWER:**     **Yes. Bruxism is the grinding of teeth due to stress.**

      b.  If Bruxism causes TMJ disorder?

**ANSWER:**     **Bruxism can contribute to TMJ.**

    13.  Please state the following:

      a.  If a careful examination of the Tempormandibular Joints and occlusion is a critical step before a specific treatment plan is provided for TMJ?

**ANSWER:**     **Yes.**

      b.  If a person with TMJ should undergo an X-ray, and/or a Computer Tomography scan ("CT"), and/or a Magnetic Resonance Imaging ("MRI") to determine the condition of the TMJ?

**ANSWER:**     **These types of tests are order/referred by an outside-of-Stateville institution, the U of I TMJ clinic.**

      c.  If you offer a dental treatment plan for inmates who have suffered from TMJ for over ten-years, if the answer is yes, please state what that dental treatment plan would consist of?

**ANSWER:**     **After analysis, warm compresses, night guards, muscle relaxants, and changing oral chewing habits, inmates are referred to U of I TMJ clinic for more specific care.**

    14. Please state the following:

      a.  If a night-guard is used to treat Bruxism?

**ANSWER:**     **Sometimes, on a case-to-case basis.**

      c.  If a night-guard is used to treat TMJ disorder?

**ANSWER:**     **Sometimes, on a case-to-case basis.**

      d.  If there is medical/dental treatment besides a night-guard for Bruxism, if the answer is yes, please state what the treatments consists of?

**ANSWER:**     **Within the institution, we provide warm compresses to joint and face analgesic for pain and muscle relaxant.**

e. If there is additional medical/dental treatment besides a night-guard for TMJ disorder, if the answer is yes, please state with the treatments consist of?

**ANSWER: Within the institution, warm compress to joint and face and observation of changing oral chewing habits and face, analgesic for pain and muscle relaxant.**

15. Please state the following:

a. If you ordered that the plaintiff receive an X-ray, and/or CT Scan, and/or MRI for his TMJ disorder (see attached Exhibit A)?

**ANSWER: No.**

b. If you are aware that a TMJ disorder causes pain?

**ANSWER: Sometimes it can cause pain.**

c. If you are aware that Bruxism causes pain?

**ANSWER: Sometimes.**

16. Please review the attached Exhibit A and state the following:

a. How many times you provided dental care to the plaintiff for his TMJ disorder?

**ANSWER: After reviewing the attached documents, I provided dental care for TMJ eight times.**

b. How many times the plaintiff was prescribed a night-guard for his TMJ disorder?

**ANSWER: After a review of Plaintiff's dental records, Plaintiff received three different night guards.**

c. How many times you prescribed pain medication to the plaintiff for his TMJ disorder and/or Bruxism condition?

**ANSWER: After a review of Plaintiff's dental records, Plaintiff received pain medication on at least 6-7 occasions.**

d. Any and all dental treatment you provided to the plaintiff for his TMJ disorder and/or Bruxism condition?

**ANSWER: After a review of Plaintiff's dental records, I provided Plaintiff with two nights guards, analysis, I prescribed muscle relaxants, and equilibration.**

e. Each date you provided dental treatment to the plaintiff for his TMJ disorder and/or Bruxism?

**ANSWER:** **After reviewing the attached documents, I provided treatment to the Plaintiff on 6/27/08; 8/15/08; 9/30/08; 12/1/08; 12/2/11; 12/4/11 and 1/21/12.**

17. Please state the following:

d. Is there additional dental treatment that can be rendered after a patient reports to you that the night-guard is non-effective?

**ANSWER:** **This is determined on a case-by-case basis. I reevaluate a patient with each dental visit. If symptoms are beyond basic care such as analgesic, muscle relaxants, equilibration, the inmate is referred to the U of I Specialty Clinic.**

18. Please state the following:

a. If the plaintiff should have only been provided a night-guard for his TMJ and/or Bruxism after suffering from these conditions for over ten years?

**ANSWER:** **No. Plaintiff received treatment in addition to night guards. Plaintiff received three night guards over the past ten years, including additional treatment of warm compresses, observation of changing oral chewing habits, and pain medication.**

b. If, for a proper diagnosis and treatment plan for TMJ and/or Bruxism, a patient may require medical evaluations from multiple medical personnel who treat these conditions?

**ANSWER:** **Yes.**

c. If TMJ and/or Bruxism left untreated can worsen?

**ANSWER:** **I am not a TMJ expert and thus not qualified to answer this question.**

d. If Bruxism can damage the TMJ Joints?

**ANSWER:** **I am not a TMJ expert and thus not qualified to answer this question.**

19. Please state the following:

a. The procedures for submitting an inmate to receive off-site dental care at a hospital and/or specialist?

**ANSWER:** **I write a referral to the Medical Director, it then undergoes a collegial review for approval at that time.**

7

     b.  If you are able to submit an inmate to receive off-site dental care?

**ANSWER:**   **Yes.**

     c.  Explain the criterion used to determine if an inmate's condition should be treated off-site at a hospital and/or specialist?

**ANSWER:**   **When basic care for TMJ does not resolve symptoms a referral is submitted for outside specialists.**

     d.  If you have to receive approval from the medical director at Stateville to send an inmate to receive dental care at an off-site hospital and/or specialist?

**ANSWER:**   **Wexford, during the collegial review, makes the final determination to approve an inmate for an off-site visit to a hospital and/or specialist.**

     e.  If you have to receive approval from Wexford to send an inmate to receive dental care at an off-site hospital and/or specialist?

**ANSWER:**   **Yes.**

20. Please state to the best of your knowledge:

     a.  How many other dentists at Stateville have the experience to treat TMJ, if any, please state these dentists' names?

**ANSWER:**   **None.**

     b.  If inmates who suffer from TMJ disorder and/or Bruxism are referred to you by other dentists at Stateville?

**ANSWER:**   **No.**

21. Please state the following:

     a.  If you are aware that TMJ disorder is a painful condition?

**ANSWER:**   **Sometimes.**

     b.  If you are aware that Bruxism is a painful condition?

**ANSWER:**   **Sometimes.**

     c.  If Wexford and/or Stateville has an onsite Pain Management Clinic to treat inmates who suffer from long term TMJ disorder and/or Bruxism, if the answer is

yes, please state who runs the Pain Management Clinic (Wexford or Stateville) and the name of the clinic's supervisor?

**ANSWER:** **No.**

d.  What conditions are treated at the Pain Management Clinic?

**ANSWER:** **Stateville does not have a Pain Management Clinic.**

e.  How long does an inmate have to suffer from a condition before he is recommended to the Pain Management Clinic?

**ANSWER:** **I do not make these decisions.**

22. Please state the following:

e.  If you have reviewed the grievances the plaintiff filed on December 24, 2011? (see attached Exhibit F), (also see attached Exhibit A, page 8, date February 15, 2012).

**ANSWER:** **I received a grievance which is indicated on February 15, 2012, but I don't recall this specific grievance from this Plaintiff.**

f.  If you talked to, informed (in any way) communicated with (in any way) Dr. Carter about the Plaintiff's December 24, 2011 grievance requesting to be sent to a TMJ expert, if the answer is no, please explain why?

**ANSWER:** **I do not recall speaking to Dr. Carter about this Plaintiff about this specific issue.**

g.  If Dr. Carter required you to notify him about grievances written against the dental department and/or grievances written against him?

**ANSWER:** **No.**

h.  If you and/or Dr. Carter had a system to process grievances and complaints against the dental department, if the answer is yes, please explain how that system worked?

**ANSWER:** **A dentist reviews the grievance and submits a written response to the Health Care Unit Administrator who forwards the response to the Grievance Office to be incorporated in the grievance officer's response.**

## VERIFICATION

I, **Jaqueline Mitchell-Lawshae**, first being duly sworn under oath, state that the

Answers to Plaintiff's First Interrogatories are true and correct to the best of my

knowledge and belief.

_Jaqueline Mitchell-Lawshae_
Jaqueline Mitchell-Lawshae

**SUBSCRIBED** and **SWORN** to
before me this 24th day
of January, 2014.

NOTARY PUBLIC

OFFICIAL SEAL
LORA L HAVEN
NOTARY PUBLIC - STATE OF ILLINOIS
MY COMMISSION EXPIRES:02/25/17

EXHIBIT-R

STATE OF ILLINOIS )
                  ) SS
COUNTY OF WILL    )

## AFFIDAVIT

I, DOIAKAH GRAY, swear under the penalty of perjury that the contents found within this affidavit are true to the best of the affiant's knowledge ( hereafter: "Plaintiff").

1. The Plaintiff suffers from bruxism, malocculsion, and Temporomandibular Joint Disorder (TMD).

2. The Plaintiff has suffered from bruxism and TMD since the year 1999. The Plaintiff's TMD has continued to decline year after year.

3. The Plaintiff has been notified by Dr. JACQUELINE MITCHELL ("Dr. Mitchell") and other dentists at Stateville Correctional Center ("Stateville") that his bruxism is the cause of his TMD. The Plaintiff also has been notified by the dental staff and medical staff, including LATANYA WILLIAMS that the Plaintiff's headaches, migraines, and head spams are caused by the Plaintiff's bruxism and TMD.

1

4. The Plaintiff suffers chronic pain 24 hours a day in the face and jaws as well as facial swelling, neck pain, and dysfunction of the Plaintiff's temporomandibular joint and mouth. The Plaintiff's jaw locks close and makes a clicking sound when the Plaintiff opens his mouth.

5. The Plaintiff started reporting his TMJ pain to the medical department at Stateville Correctional Center ("Stateville") in the year 1999.

6. The Plaintiff started reporting his TMJ pain to the dental department at Stateville in the year 2001.

7. Since the Plaintiff's TMD condition started, the condition has continuely worsen and the pain has increased. since 1999.

8. During January of 2010, the Plaintiff's TMD began to rapidly worsen. The headaches that the Plaintiff once experience weekly, became headaches daily. Coupled with migraines and headspams.

9. When the Plaintiff wakes up in the morning, his jaws are locked closed. It takes approximately 30 minutes in the morning to get his mouth to open through painful stretching and pushing of the Plaintiff's jaws and mouth.

10. Every day the Plaintiff awakes with excruciating pain in his face, neck, jaws, and head. The pain remains constant throughout the day.

11. On May 30, 2008, the Plaintiff was seen by Dr. Mitchell. On this date the Plaintiff reported to Dr. Mitchell about his painful TMD condition. The Plaintiff notified Dr. Mitchell he has been prescribed night-guards and the night guards do not help the Plaintiff's pain or TMD condition.

12. Over a three year period, despite the Plaintiff's notification to Dr. Mitchell that the night-guards are noneffective, Dr. Mitchell repeatly prescribed the Plaintiff night-guards.

13. On December 2, 2011, the Plaintiff was seen by Dr. Mitchell. On this date the Plaintiff reported to Dr. Mitchell the sever decline that the Plaintiff's TMD had taken. See paragraphs 8-10.

14. The Plaintiff notified Dr. Mitchell that he has had many night-guards, and that she had prescribed the Plaintiff night guards before, and the night-guards are non effective, for the Plaintiff's TMD.

15. However, Dr. Mitchell still only prescribed the Plaintiff a night-guard. The Plaintiff reiterated to Dr. Mitchell that his TMD had worsened and that the Plaintiff was suffering from daily headaches, migraines, headspams, neck pain, jaw pain and facial swelling. The Plaintiff notified Dr. Mitchell that he is in constant

Pain 24 hours a day, and that the Plaintiff's jaws lock close in the morning. When the Plaintiff wakes up it takes approximately 30 minutes to get his jaws to open.

16. On December 14, 2011, the Plaintiff was seen again by Dr. Mitchell. The Plaintiff reported to Dr. Mitchell about the decline of his TMD and that night-guards were noneffective for his TMD and that they hurt the teeth and mouth.

17. The Plaintiff continued to complain to Dr. Mitchell about the severity of his TMD. At this time Dr. Mitchell notified the Plaintiff that she does not know how treat chronic TMD that the Plaintiff has. Dr. Mitchell went on to notify the Plaintiff the only treatment he could receive for his TMD at Stateville is a night guard.

18. The Plaintiff requested to be submitted for treatment by a TMD expert.

19. Dr. Mitchell agreed that the Plaintiff's Chronic TMD would have to be treated by a TMD expert. However, she would not submit the Plaintiff for off-site treatment. Dr. Mitchell told the Plaintiff that he would have to contact Stateville's medical director, Dr. IMHOTEP CARTER ("Dr. Carter"), and request to see a TMD expert.

20. Dr. Mitchell also stated that Dr. Carter would not submit the Plaintiff for treatment by a TMD expert because Wexford and the Illinois Department of Corrections ("IDOC") do not treat chronic TMD, but that the Plaintiff could still try to get treatment if he wanted to.

21. On September 19, 2011, after seeking treatment and pain medication for his chronic TMD, the Plaintiff contacted Dr. Carter by submitting two medical requests for treatment of his TMD. One request was submitted via the institutional mailing system and one was submitted in the medical drop box for medical requests.

22. At this time the Plaintiff was contacting Dr. Carter because the Plaintiff had sought treatment for his TMD by the Medical staff. The Plaintiff was seen twice by Dr. STEVEN FISCHMAN, D.D.S ("Dr. Fischman"). Dr. Fischman told the Plaintiff despite how bad his TMD condition is (the Plaintiff reported to Dr. Fischman the pain he was having as stated in the above paragraphs 8-10) he does not treat TMD and that he would do nothing to help the Plaintiff get treatment for his TMD.

23. Dr. Fischman would not even provide the Plaintiff with pain medication to help with the headaches, migraines, and headspasms.

24. In the medical requests submitted to Dr. Carter, the Plaintiff notified Dr. Carter that his TMD had declined and that he was

having severe headaches, migraines and headspams.

25. On September 19, 2011, the Plaintiff contacted JOSEPH SHEENY ("Sheeny"). The Plaintiff notified Sheeny that he had filed grievances requesting pain medication to help with the Plaintiff's severe headaches, migraines, and headspams.

26. The Plaintiff submitted two medical requests to Sheeny on September 19, 2011, requesting medical treatment. One request was submitted via the institutional mailing system and one request was submitted in the medical drop box for medical requests.

27. The Plaintiff personally spoke to Sheeny, face to face, and requested medical treatment for his TMD and Sheeny did not schedule the Plaintiff treatment during 2011

28. On October 5, 2011, the Plaintiff contacted WARDEN DARRYL EDWARDS ("Edwards"). The Plaintiff notified Edwards that he suffered from TMD and was in great pain and the medical staff has not provided the Plaintiff with any pain medication or medical treatment.

29. The Plaintiff personally spoke to Edwards, face to face, and requested medical treatment for his TMD. Edwards did nothing to help the Plaintiff receive medical treatment.

30. On October 5, 2011, the Plaintiff submitted two Medical

requests for treatment for his TMD to Sheeny. One medical request was submitted via the institutional mailing system and one request was submitted in the medical drop box for Medical requests. Sheeny never scheduled the Plaintiff for sick call.

31. On December 14, 2011, the Plaintiff submitted two Medical requests to Dr. Carter requesting treatment for his TMD and for submission to a TMD expert. One medical request was submitted via the institutional mailing system and one request was submitted via the medical drop box for medical requests.

32. The Plaintiff has suffered from bruxism and TMD since 1999. The Plaintiff's TMD condition continues to worsen and the Plaintiff remains in excruciating pain 24 hours a day. The Plaintiff's TMD negatively effects the Plaintiff's every day life.

33. During the year 2010, the Plaintiff's TMD rapidly declined.

34. By June of 2012, the Plaintiff's TMD had reached its worse point.

35. The Plaintiff continues to suffers from daily headaches, migraines, and headspams. In addition, the plaintiff endures constant prolonged pain 24 hours a day in the jaws, face, neck, ears, and head.

36. The Plaintiff has repeatly reported to Dr. Mitchell and other staff that the night-guards have never helped with the Plaintiff's TMD

37. The Plaintiff's jaws have lost-function. The Plaintiff cannot open his mouth when he awakes in the morning. It takes approximately 30 minutes for the Plaintiff to get his mouth to open.

38. The Plaintiff's mouth does not close all of the way and the Plaintiff's remains with an open bite.

39. The Plaintiff's temporman dibular Joints lock close and he has facial swelling on both sides of his face.

40. On March 9, 2012, the Plaintiff was seen by Dr. Carter for heart palpatations. The Plaintiff notified Dr. Carter about his TMD condition. Dr. Carter told the Plaintiff that his TMD would not be addressed at this medical visit because it is a difficult problem to treat.

41. The Plaintiff has reported all the conditions stated above in paragraphs 32-39 to Dr. Mitchell, Dr. Fischman, Dr. Carter, Warden Edwards, Sheeny, and Hardy.

42. On November 19, 2013, Dr. Mitchell examined The Plaintiff for his TMD.

43. The Plaintiff's TMD has continued to decline. On November 19, 2013, due to the Plaintiff's TMD condition, Dr. Mitchell referred the Plaintiff for treatment by a TMD expert.

DOIAKAH GRAY
AFFIANT- PLAINTIFF
PRO SE

SUBSCRIBED AND SWORN TO BEFORE ME THIS 21st DAY OF NOVEMBER 2013

NOTARY PUBLIC

OFFICIAL SEAL
PHYLLIS BAKER
Notary Public - State of Illinois
My Commission Expires Jan 19, 2015

9

EXHIBIT-S

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

DOIAKAH GRAY,          )
                                   )
           Plaintiff,        )
                                   )
        v.                 )     Case No. 12 C 244
                                   )     Honorable Judge Gary Feinerman
IMHOTEP CARTER, et al.,   )
                                   )
           Defendants,    )

## DEFENDANT HARDY'S ANSWER TO PLAINTIFF'S
## FIRST SUBMISSION OF INTERROGATORIES

The Defendant, MARCUS HARDY, by and through his attorney LISA MADIGAN,

Attorney General of Illinois, hereby responds to Plaintiff's First Submission of Interrogatories as

follows:

1.     Please state the full name and title of the person answering these interrogatories.

**ANSWER:** **Defendant objects to this interrogatory to the extent that it seeks information protected by the attorney client privilege. Without waiving this objection, Marcus Hardy responded to these interrogatories.**

2.     Please state if you are the Chief Administrative Officer ("Warden") of Stateville Correctional Center, if the answer is yes, please state the date you became the warden of Stateville.

**ANSWER:** **I am not the Chief Administrative Officer of Stateville Correctional Center. I was the Warden of Stateville Correctional Center from December, 2009, through December, 2012.**

3.     Please state as the warden of Stateville if you are:

    (a)    Responsible for the safety, security, and well-being of inmates incarcerated at Stateville.
    (b)    Responsible for ensuring, to the best of your ability, that prison officials do not violate prisoners' constitutional rights.
    (c)    Responsible for ensuring that there is a medical delivery system to provide medical treatment to inmates.

i

(d)     Responsible for ensuring that prison officials are performing their duties with respect to the prison official's job title.

**ANSWER:     Admit.**

4.     Please state your duties as the warden of Stateville.

**ANSWER:     Please see attached description of Warden duties at Stateville.**

5.     Please state if you have any medical experience, medical expertise and/or medical training. If yes, please state the medical experience, medical expertise and/or medical training.

**ANSWER:     I am not a licensed medical professional but I do receive basic first aid training on a yearly basis.**

6.     Please state if you review emergency grievances and grievances filed by inmates.

**ANSWER:     When I was the Chief Administrative Officer at Stateville Correctional Center, inmate emergency grievances were generally reviewed by my designee.**

7.     Please state if an investigation is conducted by you and/or staff when an emergency grievance is filed directly to you.

**ANSWER:     A medical emergency is substantiated when the inmate sustains or is in a life-threatening injury or situation. If the Warden, or his designee, deems the issue in the emergency grievance as a life-threatening issue, the issue is generally, immediately addressed within 24 hours. If the Warden, or his designee, finds that an emergency is not substantiated, the inmate receives this response in writing and advised that he should submit the grievance in the normal manner.**

8.     Please state if you conducted an investigation into the Plaintiff's emergency grievances filed October 4, 2011, October 13, 2011, October 20, 011 and December 23, 2011. (See: Plaintiff's First Request For Admission to Defendant Marcus Hardy, Exhibit - B), If yes, please state the results of your investigation. If no, please state the reason(s) why an investigation was not conducted.

**ANSWER:     When I was the Chief Administrative Officer at Stateville Correctional Center, inmate emergency grievances were generally reviewed by my designee.**

9.     Please state if you are aware that the Plaintiff alleged in his emergency grievances that he was not receiving medical treatment.

**ANSWER:     I do not recall the Plaintiff alleging not receiving medical treatment.**

2

10. Please state if you are aware that the Plaintiff alleged in his emergency grievances that he was in constant pain due to his degenerative Temple Mandibular Joint Disorder (TMJ).

**ANSWER:** **I do not recall the Plaintiff alleging he was in constant pain due to his degenerative Temple Mandibular Joint Disorder (TMJ).**

11. Please state what your duties are when you became aware that the medical department and staff has refused and/or failed to provide an inmate with medical treatment.

**ANSWER:** **I do not recall the medical department and staff refusing or failing to provide an inmate with medical treatment.**

12. Please state if you can order medical staff to review and/or provide medical treatment.

**ANSWER:** **I am not a medical professional and therefore cannot make determinations for medical treatment. I do have the authority to place an inmate on the sick call list.**

13. Please state if you contacted the medical department regarding the Plaintiff's emergency grievances requesting medical treatment.

**ANSWER:** **I do not recall contacting the medical department regarding the Plaintiff's emergency grievances requesting medical treatment.**

14. Please state what constitutes a substantiated emergency grievance.

**ANSWER:** **A medical emergency is substantiated when the inmate sustains or is in a life-threatening injury or situation.**

Respectfully submitted,

LISA MADIGAN
Attorney General of Illinois

/s/ Agnes Ptasznik
AGNES PTASZNIK
Assistant Attorney General
Office of the Illinois Attorney General
100 W. Randolph St., 13th Flr.
Chicago, Illinois 60601
(312) 814-4217

3

## VERIFICATION

I, _Marcus Hardy_, first being duly sworn under oath, state that the Answers to Plaintiff's First Submission of Interrogatories are true and correct to the best of my knowledge and belief.

> OFFICIAL SEAL
> ROGER L WAIT
> NOTARY PUBLIC - STATE OF ILLINOIS
> MY COMMISSION EXPIRES:09/22/15

_____
MARCUS HARDY

SUBSCRIBED and SWORN to
before me this 2-1 day
of _____Octo_____, 2013.

_____
NOTARY PUBLIC

4

DOIALIAH GRAY )
                )  Case No. 12 C 244
IMTEHUP CARTER )


## CERTIFICATE OF SERVICE

On February 14, 2014, I Doialiah Gray, caused
a copy of his motion to go to Agnes Ptazinick Assistant
Attorney General 100 w Randolph St. Chicago IL 60443


Doialiah Gray


Subscribed and Sworn to before
me This 10 day of February 2014

NOTARY PUBLIC

OFFICIAL SEAL
TYNEER N. BUTLER-WINTERS
Notary Public - State of Illinois
My Commission Expires Jan 20, 2015

DOIALIAH GRAY )

            ) Case No. 12 C 244

IMTEHUP CARTER )

## CERTIFICATE OF SERVICE

On February 14, 2014, I  Doialkah Gray, Caused
a copy of his motion to go to Agnes Ptazinick Assistant
Attorney General  100 W Randolph St. Chicago IL 60443

Doialkah Gray

Subscribed and sworn to before
me This 10 day of february 2014

NOTARY PUBLIC

OFFICIAL SEAL
TYNEER N. BUTLER-WINTERS
Notary Public - State of Illinois
My Commission Expires Jan 20, 2015